**In re R. Craig HICKS, Debtor.**

**RICNICK'S FITNESS CENTER, INC., Plaintiff,**

v.

**R. Craig HICKS, and Diane M. Puckhaber, Trustee, Defendants.**

**Bankruptcy No. 85–196.
Adv. No. 85–54.**

United States Bankruptcy Court,
D. New Hampshire.

March 13, 1987.

Walter Sweeney, Peterborough, N.H., for plaintiff.

Grenville Clark, Manchester, N.H., for defendant/debtor.

Diane Puckhaber, Concord, N.H., trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding was tried before the court upon the plaintiff-creditor's complaint seeking a denial of the debtor's discharge on various grounds under § 727 of the Bankruptcy Code. The case was originally tried on September 17, 1986, but thereafter the plaintiff moved to reopen the case to introduce additional evidence, which motion was granted and a continued trial held on February 26, 1987.

The only grounds under § 727 that deserve extended comment upon the evidence presented are the grounds asserted under § 727(a)(2) and § 727(a)(5) of the Code. Those statutory provisions provide as follows:

*Bankruptcy Code § 727(a)(2)*

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

\*     \*     \*     \*     \*     \*

*Bankruptcy Code § 727(a)(5)*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

\*     \*     \*     \*     \*     \*

The transfer and asset involved in these charges was some $5,000 in cash held by the debtor's solely owned corporation, Land-Ex Services, Inc., which was transferred in September of 1984 for the benefit of the debtor's newly-formed corporation, Monadnock Excavation Corp., which was owned equally by the debtor and his female companion.

Prior to the $5,000 transfer in September of 1984, which was used to obtain the rental of equipment necessary to get the new corporation into operation, the debtor and Land-Ex had been engaged in litigation with RicNick's Fitness Center, in which RicNick was seeking a judgment for damages for alleged improper excavation work for a swimming pool by the debtor and Land-Ex. RicNick was pursuing certain prejudgment attachment proceedings in the state court at the time that the Monadnock Corporation was formed by the debtor.

The $5,000 transfer was set forth on the books of Land-Ex as "equipment rental" even though the debtor testified that it really was a "loan" to Monadnock. In effect the monies were used for equipment rental purposes *for Monadnock* but in no sense represented anything other than *an advance of cash* by Land-Ex for the benefit of Monadnock.

On May 7, 1985 the debtor filed his own Chapter 7 bankruptcy petition, and a companion Chapter 7 bankruptcy petition for Land-Ex Services, Inc. In signing the schedules of assets and liabilities for Land-Ex, Inc., the debtor does not list as an asset any loan payable by Monadnock to Land-Ex. The debtor's explanation at trial for this omission was that the loan had been repaid indirectly by the use of a sanding machine owned by Monadnock by Land-Ex during the winter of 1984–85 on snow plowing activities for the Town of Peterborough, New Hampshire. Since Land-Ex did not pay any rental to Monadnock for the use of the sanding machine, the debtor testified that he considered the $5,000 obligation to Land-Ex to be repaid in effect by the forgiveness of such rental charges.

When confronted at the second trial with new evidence from the town records indicating that the total sanding services provided by Land-Ex during that winter did not exceed $1,600, the debtor testified that Land-Ex had done other sanding work for the town that winter that he "forgot to bill" and that Land-Ex had used the sander for other work not involving the Town of Peterborough, New Hampshire.

This new testimony by the debtor I do not find to be credible. In addition, the record of the detailed discovery efforts by the plaintiff in this adversary proceeding, over a period of one year, clearly indicate that if there were any such other activities justifying a contention that the loan had been "repaid" the debtor clearly had numerous opportunities to so state and failed to do so.

On the contrary, I believe the entire record in this cause supports a finding that the debtor formed the new corporation for the express purpose of frustrating RicNick

in its attempt to collect on its claim for damages for the swimming pool work, with the intent of leaving Land-Ex as a shell with no realizable assets other than rented equipment which would be repossessed. I further find that the advance of the $5,000 to Monadnock was essential to getting the new corporation in operation, to perform the same work for the same customers as the old corporation, and that the advance was deliberately disguised by a misleading entry on the books. These facts are sufficient for establishing the ground for denial of discharge under § 727(a)(2)(A) of the Code.

Even if the foregoing facts were not sufficient to establish that ground for denial of discharge, they clearly are sufficient to establish the alternative ground under § 727(a)(5) of the Code. To this day, the debtor has failed to satisfactorily explain the disposition of the $5,000 in cash advance to Monadnock. While he blithely asserted at the second trial that "I could have charged any rental I wanted for the sander since I owned both corporations" the fact remains that the evidence submitted by the debtor still does not establish any "repayment" of the loan to Monadnock over and above the maximum of $1,600 under the bill submitted to the Town of Peterborough for sanding services by Land-Ex.

The books and records of Land-Ex and Monadnock are totally insufficient to establish any repayment of the loan in question. While informal and even sloppy bookkeeping does not always justify a § 727(a)(5) denial of discharge, the debtor in this case was given ample opportunity at various stages of the bankruptcy proceeding, and of the discovery and trial stages of this adversary proceeding, to account fully for the disposition of that asset and its alleged repayment. Aside from additional oral explanations of "other factors" given by the debtor as he has been confronted with each discrepancy, which explanations I do not find to be credible, the debtor has simply failed to satisfactorily explain the disposition of that asset.

For all of the foregoing reasons I conclude that the plaintiff's objection to the discharge of the debtor in this proceeding are well taken and should be granted. A separate judgment to that effect shall be entered.