In re Jerry **BEEBER**, Debtor.

**Walter H. Rothman, individually and on behalf of Rothman Beeber, P.C. n/k/a Jerry Beeber, M.D., P.C. and Rothman Beeber, P.C., Plaintiffs,**

**v.**

**Jerry Beeber and Carla Beeber, Defendants.**

**Bankruptcy No. 195–10950–260.**
**Adversary No. 195–1465–260.**

United States Bankruptcy Court, E.D. New York.

Sept. 10, 1999.

Steven R. Miller, Jaffe, Segal & Ross, New York City, for plaintiffs.

Lance Roger Spodek, Lance Roger Spodek, P.C., New York City, for debtor/defendants.

## DECISION ON DISCHARGE AND DISCHARGEABILITY

CONRAD B. DUBERSTEIN, Chief Judge.

### MEMORANDUM OPINION

On February 3, 1995, Jerry Beeber, M.D., the Debtor herein, (hereinafter "Debtor," "Dr. Beeber" or "Defendant"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Richard J. McCord, Esq. was appointed as the Chapter 7 trustee. The instant adversary proceeding was instituted by Walter H. Rothman (hereinafter "Dr. Rothman") and on behalf of Rothman Beeber, P.C. (collectively, the "Plaintiffs"). The complaint sought to have certain debts allegedly due Dr. Rothman from the Debtor deemed nondischargeable pursuant to §§ 523(a)(4) and (a)(6) of the Bankruptcy Code.[1] In addition, the complaint sought to have the Debtor's discharge denied pursuant to §§ 727(a)(2)(A), (a)(2)(B), (a)(4)(A) and (a)(6). Thereafter, this Court conducted a trial. Following the trial of the issues the parties submitted memoranda of law. Upon consideration of the pleadings and the memoranda of law, as well as the arguments and testimony presented at 14 days of trial, for the reasons stated below, I conclude that the Plaintiffs' have failed to sustain the allegations in the complaint which seek a denial of the Debtor's right to a discharge and consequently the Debtor is granted a discharge. That portion of the complaint which seeks to have deemed nondischargeable the debts allegedly due from the Debtor to the Plaintiffs under § 523(a)(6) is denied. Plaintiffs' claim pursuant to § 523(a)(4) is granted to the extent that the amount of $262,555.44 owed by the Debtor to Dr. Rothman is deemed nondischargeable. Pursuant to Federal Rule of Bankruptcy Procedure 7052, this opinion constitutes the Court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

### FACTUAL BACKGROUND

The following facts are uncontested. The Debtor and Dr. Rothman are both medical doctors, licensed to practice in New York State. Dr. Rothman had conducted a medical practice specializing in

---

1. All further statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise noted, and will hereinafter be referred to only by the appropriate section number.

gastroenterology at 1800 Clove Road, Staten Island, New York since at least 1973. A New York professional corporation known as "Walter H. Rothman, M.D., P.C." was formed by Dr. Rothman pursuant to a certificate executed by him on March 9, 1973 that was subsequently filed with the New York State Department of State on April 23, 1973. Dr. Rothman was the sole shareholder, officer and director of Walter H. Rothman, M.D., P.C. when the certificate was filed.

Dr. Rothman subsequently met Dr. Beeber and they decided to specialize in the same type of practice, as Rothman Beeber, P.C (hereinafter "RBPC"). The following documents were executed by them on July 1, 1978 to form this new joint practice: (1) Stock Purchase Agreement, (2) Promissory Note, (3) Shareholders Agreement, (4) Escrow Agreement, (5) Employment Agreement between Dr. Rothman and Rothman Beeber, P.C., and (6) Employment Agreement between Dr. Beeber and Rothman Beeber, P.C.

(1) The *Stock Purchase Agreement* provided, *inter alia*, that Dr. Rothman agreed to sell Dr. Beeber five of his ten shares of the common stock of Walter H. Rothman, M.D., P.C., which the Debtor agreed to purchase. The five shares represented 50% of the issued and outstanding common stock of the corporation. The Debtor, pursuant to the agreement, was to pay $68,500 over time in accordance with a payment schedule outlined in the Promissory Note in order to acquire the five shares. He paid $100 toward this obligation at the closing. As the payments outlined in the Promissory Note came due, he requested a deferment until some time in the future, which Dr. Rothman agreed to. No money, other than the $100, was ever paid by the Debtor toward this obligation.

(2) The *Promissory Note* provided that the five shares were to be the collateral to secure the payment of the $68,500 promissory note.

(3) The *Shareholders Agreement* made provisions dealing with the possibility of death, disability or termination of either of the shareholders.

(4) The *Escrow Agreement* provided that the five shares of stock being purchased by Dr. Beeber and the remaining five shares of the corporation belonging solely to Dr. Rothman be deposited in escrow with Steven H. Deutsch, C.P.A (hereinafter "Mr. Deutsch"). The agreement also provided mechanisms for the transfer of the stock depending on various events occurring as specified in the Stock Purchase Agreement and the Employment Agreements such as full payment of $68,500 by Dr. Beeber for the initial purchase of five shares as well as contingencies in the event of a disability of one of the doctors.

(5) & (6) The *Employment Agreements* detailed the salaries each was to receive, including provisions in the event of a disability of one of the doctors, and noncompete clauses in the event either of them left the practice.

The name of the corporation was changed from "Walter H. Rothman, M.D., P.C." to "Rothman Beeber, P.C." by certificate of amendment of the certificate of incorporation of Walter H. Rothman, M.D., P.C. This amendment was executed on July 21, 1978 and filed with the New York State Department of State on August 16, 1978. Dr. Rothman and the Debtor constituted the entire board of directors with Dr. Rothman as president and Dr. Beeber as secretary of RBPC.

At the end of October 1993, the Debtor assumed control of all financial aspects of RBPC.

Thereafter, in a letter dated November 5, 1993, Guardian Life Insurance Company notified Mr. Deutsch, as escrow agent, that a determination had been made deeming Dr. Rothman to be totally disabled as of January 2, 1992 under its disability policy. Pursuant to Article 11(b) of his employment agreement, Dr. Rothman was entitled to receive severance pay of $440,000 in

the event his employment was terminated due to a disability. Dr. Rothman has previously stipulated that the amount of severance pay payable to him under his Employment Agreement, which amounted to $330,000, would be offset by the proceeds payable under the Guardian Life Insurance Company disability policies.

During the period of November 1993 through January 1995, the Debtor used funds from RBPC to pay various personal expenses including credit card charges for gasoline, home telephone bills and car repair bills. The Debtor executed and filed a certificate of amendment of RBPC's certificate of incorporation with the New York State Department of State on March 15, 1994 changing the name of RBPC to "Jerry Beeber, M.D., P.C." The Debtor identified himself in the foregoing certificate as RBPC's sole shareholder.

At some time after January 1, 1995, the Debtor removed all active RBPC patients' medical records and complete personal histories of at least 766 patients stored on RBPC's computer disks without Dr. Rothman's permission.

Dr. Beeber filed the instant bankruptcy petition on February 3, 1995.

At some time before February 6, 1995, the Debtor sent a written announcement to patients of RBPC informing them that he was relocating his office to 3371 Richmond Avenue, Staten Island, N.Y. as of February 6, 1995. For approximately two months, anyone calling RBPC's telephone number was instructed to contact Dr. Beeber at his new office phone number. All RBPC's medical assistants and office personnel became employed at the Debtor's "solo practice" at the new address. Patients who had made appointments for office visits prior to the move, but scheduled for a date subsequent to February 6, 1995, were told to come to the new office.

## PROCEDURAL BACKGROUND

Prior to the initiation of this bankruptcy case, Dr. Beeber commenced an action against Dr. Rothman in Supreme Court, Suffolk County, seeking a determination that the various agreements between the parties were unenforceable and money damages against Dr. Rothman for breach of fiduciary duties.[2] That court issued an order directing the parties to arbitrate pursuant to the arbitration clauses contained in the aforementioned agreements. After Dr. Beeber filed for bankruptcy, he started an adversary proceeding (Adv.Pro. No. 195–1136–260) in this Court to enjoin the arbitration proceeding. This Court issued an order dismissing that adversary proceeding and modified the automatic stay under § 362 so as to allow that pending arbitration to continue and reach a resolution based upon the assumption that the arbitration panel would adjudicate the monetary amount owed by Dr. Beeber to Dr. Rothman and the parties would subsequently return to this Court for the determination of any issues outside the realm of that arbitration decision.

Thereafter, Dr. Rothman filed this instant adversary proceeding individually and on behalf of RBPC against Dr. Beeber and Dr. Beeber's wife Carla Beeber ("Mrs. Beeber")[3] on September 20, 1995 in order to obtain a nondischargeability determination of the debts owed to him and RBPC as well as seeking to deny the Debtor a discharge. On October 27, 1995, Dr. Beeber interposed his answer to the complaint.

During the early stages of this adversary proceeding, the arbitration proceedings were completed. On June 24, 1996, the arbitration panel's award was confirmed by Hon. Jack J. Cannavo, a Justice of the New York Supreme Court, Suffolk County. The arbitration panel's award

---

**2.** *Jerry Beeber, Rothman Beeber, P.C. and Concord Enterprises v. Walter H. Rothman and Steven Deutsch,* No. 94–17960 (Sup.Ct., Suff. Cty., 1994).

**3.** A stipulation withdrawing all claims against Mrs. Beeber was signed on October 6, 1997 effectively removing Mrs. Beeber as a defendant in the adversary proceeding.

found the Debtor to be liable to Dr. Rothman in the amount of $130,000, and the Debtor and Rothman Beeber, P.C. were found to be jointly and severally liable for $145,000 to Dr. Rothman.

The parties proceeded to pursue the requirements of the Federal Rules of Civil Procedure regarding the procedure in this adversary proceeding. On January 17, 1997, Dr. Rothman filed a motion for a protective order with respect to Dr. Beeber's notice for discovery. Thereafter, the protective order was granted by this Court. Dr. Rothman appealed from that order to the District Court which eventually dismissed the appeal for failure to prosecute. During the aforementioned period, a motion brought on by the Debtor for leave to file an amended answer was denied.

In June of 1997, Plaintiffs moved for summary judgment and after hearing the motion it was denied by this Court by oral decision finding that material questions of fact existed requiring a trial. dates were scheduled with the parties. After fourteen days of trial testimony, this Court reserved decision on July 16, 1998.

During the time that this Court was preparing to decide the issues raised in this proceeding and on November 19, 1998, Plaintiffs' moved to continue the trial hearing for the purpose of introducing more evidence and testimony. This Court denied the motion in a written decision issued January 21, 1999. After considerable communication to this Court by counsel for the Plaintiffs and Debtor, the order denying the motion was then signed on February 9, 1999. The Plaintiffs filed a notice of appeal of that order which was subsequently withdrawn. This Court then proceeded, unhampered, to decide the issues reflected in this opinion.

## Res Judicata Issue

The Debtor raises the issue that the arbitration award should have a res judicata effect on the decision of this Court. The Plaintiffs' argue that the Debtor is precluded from raising the defense of res judicata because it is an affirmative defense that must be pleaded. Rule 7008 makes Federal Rule of Civil Procedure 8 applicable to adversary proceedings. Federal Rule of Civil Procedure 8 states in pertinent part:

> (c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

FED.R.CIV.P. 8(c).

The doctrine of res judicata, also called "claim preclusion," provides:

> that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

46 AM.JUR.2D, *Judgments* § 514 (1994). Moreover, the Supreme Court has explained that "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted *or determined in the prior proceeding.*" *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The present case is unusual in that the arbitration proceeding was pending but no award had been issued at the time this adversary proceeding had been commenced. Therefore, the defendant could not have pled the affirmative defense of res judicata at the point his answer was filed since there was no award yet issued on which to base that defense. In addition, as has been noted, the arbitration

proceeding was approved of by this Court at the time it dismissed the first adversary proceeding on the assumption that the arbitration panel would adjudicate the monetary amount owed by Dr. Beeber to Dr. Rothman and the parties would subsequently return to this Court for the determination of any issues outside the realm of that arbitration decision. Therefore, this Court contemplated that the arbitration award would effectively preclude this Court from having to adjudicate the issues surrounding the actual amount owed. As this Court has observed above, the award in the arbitration proceeding was confirmed by the Supreme Court of the State of New York.

■■■ Res judicata, regardless of whether it had to be affirmatively pled given the circumstances in this case, would not be appropriate to tie this Court's hands from confronting the issues raised as to the dischargeability of the arbitration award as well as the request for the denial of the Debtor's discharge. However, issues that were raised and litigated, or could have been properly litigated in the arbitration proceeding will not be re-litigated by this Court under the doctrine of collateral estoppel, often referred to as "issue preclusion," which precludes the re-litigation of particular issues in a subsequent action on a different cause of action. 46 Am.Jur.2d, *Judgments* § 539 (1994). Thus, "[w]hereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown*, 442 U.S. at 139 n. 10, 99 S.Ct. 2205. As each cause of action is addressed, this Court will address the question as to when and under what circumstances collateral estoppel applies.

### The Complaint

The Plaintiffs' complaint which was filed prior to the arbitration panel issuing its award sets forth eight counts, although the Plaintiffs' post-trial brief appears to limit arguments to the sixth, seventh and eighth counts. For the sake of completeness, a review of all of the counts in the complaint will be set forth as well as an assessment of what causes of action are still properly before this Court since the issuance of the arbitration award.

The first count of the complaint states that the Debtor filed his petition in bad faith in order to deprive Dr. Rothman of money due him under contractual agreements between the parties, by diverting Dr. Rothman's former medical practice to himself for no consideration. Without providing a statutory basis, the Plaintiffs' contend that this constitutes a reason for denial of the Debtor's discharge. However, this "bad faith" cause of action was dismissed during the course of the trial. (Tr. June 24, 1998 at 22–23.)

The second count alleges that the Debtor wrongfully diverted the aforementioned medical practice to himself for no consideration. The Plaintiffs argue that the wrongful conveyance by the Debtor of an existing medical practice allegedly violated New York Debtor and Creditor Law § 273–a [4] and should be set aside. In addition, the Plaintiffs' state that the Debtor should be compelled to reimburse creditors for the value of the medical practice. However, collateral estoppel applies in this instance inasmuch as the arbitration panel clearly considered the monetary effects of Dr. Beeber's actions regarding the medical practice. Therefore, Plaintiffs' cause of action based on a wrongful conveyance is denied.

---

**4.** New York Debtor and Creditor Law § 273–a states:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. § 273–a (McKinney 1990).

The third count states that the Debtor's conveyance of the medical practice was done at a time that the Debtor was insolvent, violating New York Debtor and Creditor Law § 273[5] and should be set aside; and as is further requested in the second count, that the Debtor be compelled to reimburse creditors for the value of the medical practice. As with the second count, this falls under the purview of the area considered by the arbitration panel in arriving at its award and therefore is precluded from being litigated in this forum by virtue of collateral estoppel. Plaintiffs' cause of action based on a violation of Debtor and Creditor Law § 273 is denied.

The fourth count alleges that the Debtor conveyed the medical practice to himself with the actual intent to hinder, delay or defraud Dr. Rothman, that the conveyance was a violation of New York Debtor and Creditor Law § 276[6] and should be set aside. Again, the Plaintiffs seek to have the Debtor reimburse the creditors for value. As with the second and third counts, collateral estoppel applies because the arbitration panel considered Dr. Beeber's alleged conveyance of the medical practice in issuing its award. Thus, Plaintiffs' cause of action invoking Debtor and Creditor Law § 276 is denied.

The fifth count states that the Debtor was a fiduciary of Dr. Rothman and RBPC. The Plaintiffs' allege that he violated this fiduciary duty by, among other actions, using $45,936.60 in corporate funds to pay personal debts. The Plaintiffs' contend that these actions constituted fraudulent conveyances and which must be returned to RBPC and that all assets wrongfully conveyed including the $45,-936.60 and other sums proven at trial should be returned to RBPC. The factual allegations of Dr. Beeber's violation of his fiduciary duty fall under § 523(a)(4), which is addressed directly by Dr. Rothman in his sixth count regarding the nondischargeability of this debt and therefore this Court will discuss these allegations in respect to that count.

The sixth count alleges that Dr. Beeber failed to pay Dr. Rothman a debt arising out of agreements entered into between the parties, which provided that one-half of the accounts receivable due from patients of RBPC would be paid to Dr. Rothman. It is contended that this debt should be deemed nondischargeable pursuant to § 523(a)(4) as it constitutes a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" because the Debtor wrongfully withheld and diverted the proceeds of the accounts receivable. 11 U.S.C. § 523(a)(4). The Plaintiffs', in their complaint, and in accordance with the aforementioned agreements, ask that one-half of $279,320, the amount alleged to be the sum of the accounts receivable, be deemed nondischargeable pursuant to § 523(a)(4). However, in the Plaintiffs' post-trial memorandum of law, based on the fact that the arbitration panel issued its award dealing, among other things, with the accounts receivable, Plaintiffs' argue instead that the sum of $273,881.57, which was determined by the arbitration panel as the total amount due Dr. Rothman from Dr. Beeber, should be deemed nondischargeable. Furthermore, they argue that there be deemed nondischargeable the sum of

---

**5.** New York Debtor and Creditor Law § 273 states:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. DEBT. & CRED. § 273 (McKinney 1990).

**6.** New York Debtor and Creditor Law § 276 states:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. § 276 (McKinney 1990).

$102,880 allegedly owed by the Debtor to RBPC arising out of officer loans to him calculated by an expert during the trial. The merits of the § 523(a)(4) claim will be discussed later in this opinion.

The seventh count states that the Debtor has caused willful and malicious injury to Dr. Rothman by wrongfully converting the aforementioned accounts receivable and wrongfully caused Dr. Rothman to expend funds to oppose Dr. Beeber's frivolous litigation tactics. The Plaintiffs' ask that the debt arising out of the agreements entered into between the parties, as described in the sixth count, which provided that one-half of the accounts receivable due from patients of RBPC would be paid to Dr. Rothman, allegedly amounting to $279,320, be deemed nondischargeable for willful and malicious injury pursuant to § 523(a)(6).[7] As with the sixth count, the Plaintiffs' post-trial memorandum changes the amount claimed to be nondischargeable to the amount determined by the arbitration panel to be due Dr. Rothman from Dr. Beeber, $273,881.57. The merits of the § 523(a)(6) claim will be discussed later in this opinion.

The eighth count states that the Debtor failed to make full disclosure of his finances and to produce relevant books in violation of § 727(a)(2). However, this allegation is more appropriate in relation to the § 727(a)(4) claim and is addressed in that section of this decision. In addition, it is alleged that the Debtor fraudulently conveyed assets with the actual intent to hinder, delay or defraud Dr. Rothman and RBPC in violation of § 727(a)(2).[8] The eighth count also invokes § 727(a)(4)[9] as a reason to deny the Debtor a discharge because the Debtor allegedly made materially false statements in, and omitted material facts from his petition and filed a materially false and misleading 1994 tax return. It also alleges that he lied under oath with respect to his status as a 100% shareholder of RBPC and that he grossly exaggerated his alleged personal monthly expenses in his petition and failed to disclose some expenses were those of his wife. Lastly, the eighth count states that the Debtor violated § 727(a)(6)[10] by failing to expend effort to collect accounts receivable as required by an order of this Court and failed to provide Dr. Rothman with sufficient information to enable him to collect the receivables. These claims are consistent with the Plaintiffs' arguments set forth in the post-trial memorandum and will be addressed later in this decision.

In the ninth and last count, Plaintiffs request that they be awarded legal fees

---

7. Bankruptcy Code § 523(a)(6) states:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.
 11 U.S.C. § 523(a)(6).

8. Bankruptcy Code § 727(a)(2) states:
 (a) The Court shall grant the debtor a discharge, unless ...
 (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, mutilated, or concealed—
 (A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.
11 U.S.C. § 727(a)(2).

9. Bankruptcy Code § 727(a)(4)(A) states:
 (a) The Court shall grant the debtor a discharge, unless—...
 (4) the debtor knowingly and fraudulently, in or in connection with the case—
 (A) made a false oath or account.
 11 U.S.C. § 727(a)(4)(A).

10. Bankruptcy Code § 727(a)(6) states:
 (a) The Court shall grant the debtor a discharge, unless—...
 (6) the debtor has refused, in the case—
 ...
 (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify.
 11 U.S.C. § 727(a)(6).

and expenses for this action. However, no legal argument for the payment of such fees and expenses has been postulated by Plaintiffs' counsel, nor does this Court believe that they are entitled to them. Therefore, the Plaintiffs' claim for attorneys fees and expenses is denied.

The Debtor argues that under the doctrine of res judicata, the Plaintiffs are precluded from arguing any and all causes of action because the arbitration award merged all of these claims. In addition, the Debtor argues that Dr. Rothman is no longer a shareholder of Rothman Beeber, P.C., in fact losing that status as of January of 1992 when it was determined he was totally disabled as of that date. The Debtor claims that since Dr. Rothman has not been a shareholder since January of 1992, he cannot claim violation of fiduciary duty or conversion. These defenses will be addressed later in this opinion as they are relevant to the issues before this Court.

### The Issue of the Shares of RBPC Stock

Before entering the discussion of discharge and dischargeability, a brief discourse on the status of the shares of the RBPC stock, held in escrow by Mr. Deutsch, seems appropriate at this point, as it will be relevant in the later discussion.

The shares, under the terms of the agreements between the parties, are currently held in escrow. Five shares of the stock are the shares owned by Dr. Rothman continuously since Dr. Beeber joined the corporation. These five shares, pursuant to the stock agreement would be transferred to Dr. Beeber once Dr. Rothman was fully paid under the disability provisions of the agreements. Inasmuch as he was not fully paid, Dr. Rothman should be deemed to be the owner of those five shares of stock. With respect to the other five shares, pursuant to the terms of the Purchase Agreement, the stock is deemed to be the property of Dr. Beeber, but held as collateral by Dr. Rothman subject to the payment of the amount due him for the same.

### The Issue of Dr. Rothman's Standing

Dr. Beeber contends that Dr. Rothman does not have standing to bring claims in his dual capacity, individually and on behalf of RBPC, under § 727 and § 523. It is undisputed that a creditor has standing to object to a debtor's discharge and to ask the court to determine whether a debt is nondischargeable. *Ferraro v. Phillips (In re Phillips)*, 185 B.R. 121, 128 (Bankr.E.D.N.Y.1995); *Great American Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 593 (Bankr.E.D.N.Y.1983). This includes creditors holding disputed and unliquidated pre-petition debts. *In re Phillips*, 185 B.R. at 128. In the present case, Dr. Rothman's claim has been liquidated by virtue of the arbitration panel's decision and it is not disputed at this point by the Debtor. Therefore, Dr. Rothman is clearly a creditor with standing.

Whether or not he has standing to bring an action on behalf of RBPC remains to be decided. In *In re Phillips*, cited above, Judge Eisenberg's reasoning is convincing to this Court that in a case involving a closely held corporation where ownership of that corporation is vested in the two parties to a lawsuit, "there can be little doubt that any injury to the corporation caused by one fifty percent owner is in fact a direct injury to the other owner." 185 B.R. at 127. While the parties dispute whether Dr. Rothman is at this time a shareholder of RBPC, it is clear that he was a shareholder at the time Dr. Beeber allegedly converted the practice and changed the corporate name to Jerry Beeber, M.D., P.C. No action had been taken prior to those events which would have changed the ownership of the shares of stock. Whether the arbitration panel changed Dr. Rothman's status as a shareholder when they issued the award is of no consequence because this Court accepts that Dr. Rothman was clearly a 50% shareholder of the medical practice at the time period relevant to the issues before this Court. Therefore, Dr. Rothman has

standing on behalf of RBPC to object to Dr. Beeber's discharge as well as seek a determination as to the dischargeability of the debt owed to him.

## DENIAL OF DISCHARGE

The denial of the Debtor's discharge will be addressed first because if this Court decides that Dr. Beeber's discharge should be denied, it will moot the issue of whether the Plaintiffs' particular debts are nondischargeable.

■■ As noted at the outset, Plaintiffs' complaint objects to the Debtor's discharge pursuant to §§ 727(a)(2), (4) and (6). Federal Rule of Bankruptcy Procedure 4005 places the burden of proof on the party objecting to the discharge. FED. R.BANKR.P. 4005. That party must prove the objection by a preponderance of the evidence. *See Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994); *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr.E.D.N.Y.1993).

### *§§ 727(a)(2) Claims*

Bankruptcy Code section 727(a)(2) states:

(a) The Court shall grant the debtor a discharge, unless ...

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

11 U.S.C. §§ 727(a)(2).

■ The court in *In re Silverstein* required that the party objecting to dis-

charge under § 727(a)(2)(A) prove each of the following:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) that the act was that of the Debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the Debtor's property, or permitting any of these acts to be done.

*In re Silverstein*, 151 B.R. at 660 (*citing* 4 *Collier on Bankruptcy*, ¶ 727.02 at 727–11–12 (15th Ed.1988)). The only difference for allegations brought under subsection (B) is that the act alleged to have occurred must have happened after the filing of the bankruptcy petition. Some of the allegations made by the Plaintiffs under § 727(a)(2) fail to specify whether they fall under subsection (A) or (B). However, since the time frame of the allegations clearly fall before, as well as after, the filing of the bankruptcy petition, the Court accepts that the claims fall within one subsection or the other. Therefore, this opinion will address the allegations without referring to either subsection.

In the complaint, the Plaintiffs first allege that the Debtor failed to make disclosure of his finances and to produce relevant books and records in violation of § 727(a)(2). However, this allegation is more appropriate in relation to the § 727(a)(4) [11] claim, and in fact the Plaintiffs' post-trial brief relates the facts underlying this allegation to that section of the code. Therefore the allegation will be dealt with later in this opinion.

■ The Plaintiffs' next assert that the Debtor engaged in several transactions where assets were conveyed to defraud the Debtor's creditors, including, of course, the Plaintiffs. They contend that the Debtor

---

**11.** See FN. 9 for the text of § 727(a)(4).

should be denied a discharge pursuant to § 727(a)(2) because he transferred and misappropriated the medical practice and goodwill for no consideration. However, Plaintiffs fail to meet their burden of proving, as required by § 727(a)(2), that the Debtor "transferred, removed, destroyed, mutilated, or concealed—(A) *property of the debtor* ... or, (B) *property of the estate.*" 11 U.S.C. § 727(a)(2) (emphasis added). The Plaintiffs' claim that the Debtor's conveyance of his stock interest and goodwill of RBPC to himself constituted a misappropriation of RBPC's assets. However, a misappropriation of RBPC property was not a misappropriation or transfer by the Debtor of his own property. An examination of caselaw finds that § 727(a)(2) requires that the property in question be property of the Debtor or property of the estate, not merely assets of a corporation where the Debtor is a shareholder of that corporation. *MCorp. Management Solutions, Inc. v. Thurman (In re Thurman),* 901 F.2d 839, 841 (10th Cir. 1990); *BPS Guard Services, Inc. v. Woodhead (Matter of Woodhead),* 172 B.R. 628, 633 (Bankr.D.Neb.1994); *Riumbau v. Colodner (In re Colodner),* 147 B.R. 90, 93 (Bankr.S.D.N.Y.1992); *CIT Group/Factoring Manufacturers Hanover, Inc. v. Srour, (In re Srour),* 138 B.R. 413 (Bankr. S.D.N.Y.1992). As the Court in *Srour* stated:

> Although the debtor may have a derivative interest in his corporation's assets, the term "property of the debtor" as expressed in 11 U.S.C. § 727(a)(2)(A) has reference to property in which the debtor has a direct proprietary interest. *MCorp. Management Solutions, Inc. v. Thurman (In re Thurman),* 901 F.2d 839, 841 (10th Cir.1990) ("Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest."); *In re Wines,* 114 B.R. 794, 796 (Bankr. S.D.Fla.1990).
>
> It does not follow that because the debtor may have caused his corporation

to transfer its assets in fraud of its creditors, it should also follow that the transfer of property of another entity should support a denial of the debtor's discharge when he is not charged with having fraudulently transferred any of his own property within the meaning of 11 U.S.C. § 727(a)(2)(A). *MCorp.,* 901 F.2d at 841; *Wines,* 114 B.R. at 796.

*In re Srour,* 138 B.R. at 419–20.

The Debtor may have, to some degree, transferred Dr. Rothman's property, or RBPC's property, but neither Dr. Rothman nor RBPC is the Debtor in this case. The only "property of the Debtor" that the Plaintiffs could be asserting would be the Debtor's right to the shares of RBPC that were held in escrow. The five shares that may or may not have belonged to the Debtor were never transferred in any tangible way. His right to the same depended upon his payment for them, which was never consummated. The medical practice was moved to another office and the Debtor changed the name of the corporation to Jerry Beeber, M.D., P.C., but at most, he acquired new property, he did not transfer any property belonging to him to anyone else. There must be an "actual transfer of valuable property *belonging to the debtor* which reduced the assets available to creditors and which was made with a fraudulent intent." 6 *Collier on Bankruptcy,* ¶ 727.02[5] (Matthew Bender 15th Ed. Revised 1996) (emphasis added) (hereinafter "*Collier*").

The Plaintiffs also allege that the Debtor failed to collect the accounts receivable of RBPC which destroyed property of the estate. But here again § 727(a)(2) requires a transfer of Debtor's property. The accounts receivable were, and insofar as there are accounts outstanding, are corporate assets of RBPC, not the Debtor. Therefore, for that same reason, this claim provides no basis to deny the Debtor a discharge.

The Plaintiffs also allege that Beeber fraudulently transferred the assets of

RBPC by using RBPC funds to pay personal debts. Again, the Plaintiffs speak of the funds of the corporation, not the individual Debtor in this case. This argument provides no basis for the denial of the Debtor's discharge.

Another assertion by the Plaintiffs is that the Debtor, by transferring RBPC to himself, then competing with the practice, violated a restrictive covenant which his employment agreement with RBPC provided for, thus destroying the value of the shares of RBPC. The Plaintiffs cite *Ric-Nick's Fitness Center, Inc. v. Hicks (In re Hicks)*, 71 B.R. 508 (Bankr.D.N.H.1987), in support of this contention that a transfer of assets from a debtor's corporation to a newly formed entity is fraudulent. In *In re Hicks*, the Court denied a Debtor's discharge based upon a transfer of cash from a corporation solely owned by the Debtor, to a newly formed corporation in which the Debtor only owned a one-half interest. *Id* at 509. *In re Hicks* is inapposite to the case before us because the interest the Debtor had in RBPC was not lost when he moved the office. In addition, there was no transfer of the Debtor's assets outside the reach of this Bankruptcy Court. RBPC, to the extent it exists, is still functioning under the name Jerry Beeber, M.D., P.C. Although there was expert testimony as to the value of the practice at the time the Debtor moved offices, there was no evidence to show that the practice itself is worth anything less now than it was before it was moved.

The caselaw cited by Plaintiffs in support of its numerous allegations under § 727(a)(2) deal with fraudulent transfers of different types, but do not speak to the heart of this matter, namely that the individual Debtor's property was transferred. Based on the foregoing, this Court finds that it can not deny the Debtor a discharge based upon §§ 727(a)(2)(A) or (B).

*§ 727(a)(4) Claim*

 Bankruptcy Code § 727(a)(4)(A) states:

(a) The Court shall grant the debtor a discharge, unless—...

(4) the debtor knowingly and fraudulently, in or in connection with the case

(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A). To prevail in seeking to deny a Debtor's discharge pursuant to § 727(a)(4)(A), the objecting creditor must demonstrate that the false statement was made regarding a material matter relating to the Debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property. *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr.E.D.N.Y.1995); *Walters v. Sawyer (In re Sawyer)* 130 B.R. 384, 394 (Bankr.E.D.N.Y.1991); *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991); *American State Bank v. Montgomery (In re Montgomery)*, 86 B.R. 948, 956 (Bankr.N.D.Ind. 1988). Once the creditor "presented a prima facie case of material misstatements, the burden shifts to the Debtor to explain these inaccuracies." *In re Casado*, 187 B.R. at 449. The Second Circuit in *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330, 1331 (2nd Cir.1969), explained that "[s]uccessful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt." When a debtor files for bankruptcy, that debtor must verify that the schedules and statements filed are complete and accurate. *In re Colodner*, 147 B.R. at 94.

 The Plaintiffs allege that the Debtor made a false oath by listing as exempt his interest in the RBPC retirement trust, consisting of an interest in a limited partnership known as Regional Medical Leasing Assoc., L.P., when the asset did not qualify as exempt property. However, the Plaintiffs give no legal support for the argument that scheduling a non-exempt asset as exempt may be considered by the Court as a false oath. The Debtor argues that it is a question of fact

whether assets are exempt or not and that the Debtor reasonably believed at the time the schedules were prepared that his interest was exempt. This Court in *In re Sapru*, cited above, denied a Debtor's discharge pursuant to § 727(a)(4)(A) because a multitude of misstatements and omissions of fact demonstrated a pattern of reckless disregard for the trust and intent of concealing information from the Court and its creditors. 127 B.R. at 317. In that case, the debtor failed to disclose numerous potential assets in his petition with the explanation that he, the debtor, did not think they were of sufficient value to matter to the Court. *Id.* at 316. One such item was an interest in a car that the debtor believed to be exempt, therefore he did not schedule it anywhere. *Id.* at 314. However, that differs from the instant case because here the Debtor did disclose the existence of this potential asset, the Retirement Fund, although it was incorrectly scheduled as exempt. This Court finds that the disclosure of the asset, regardless of whether it was incorrectly scheduled as exempt, is the important policy behind § 727(a)(4)(A) because it enables the Court and the Debtor's creditors to inquire into the appropriate status of the potential asset.

■ The Plaintiffs allege that the Debtor failed to explain or account in his schedules for the medical practice he divested. However, nowhere have the Plaintiffs set forth what the Debtor failed to disclose in his schedules. The Plaintiffs mention in their post-trial brief that the Debtor claimed in schedule B–12 annexed to his bankruptcy petition that the value of the stock of RBPC was "none." In addition, in schedule B–15 the Debtor listed accounts receivable as "none" but later stated at the § 341 meeting that they were a "major asset." This Court can only guess that the Plaintiffs are alleging that the Debtor should have disclosed some exact value for RBPC. The Debtor's scheduling of RBPC stock and accounts receivable was done in a reasonable way in light

of the litigation surrounding the status of RBPC at the time Dr. Beeber filed his petition. The Court in *Gillickson v. Brown (In re Brown)*, 108 F.3d 1290 (10th Cir.1997), refused to deny a Debtor a discharge under § 727(a)(4)(A). In that case, the Tenth Circuit found that although a debtor may have failed to include an asset in his schedules, he rectified that omission early in the case by disclosing his interest in an automobile at the § 341 meeting. *Id.* at 1295. Such disclosure was held to cure any intent to defraud the court which was necessary to deny the debtor a discharge under this section of the Code. *Id.* In that decision, the Tenth Circuit reversed the bankruptcy court's ruling that denied the Debtor's discharge because he failed to ultimately amend his schedules on the ultimate reasoning that "a debtor that comes forward in order to inform the bankruptcy trustee of errors in the filings would not seem to be engaged in a 'pattern of non-disclosure' absent other indicia of fraud." *Id.* During the course of this bankruptcy case, Dr. Beeber was forthcoming to the Court in disclosing the steps he had taken in regard to his moving the medical practice and renaming it.

Another case where a debtor was denied a discharge because of outrageous conduct is *In re Casado*. 187 B.R. at 447–48. There, the debtor, a doctor, intentionally failed to list pending lawsuits against him, failed to disclose the full amount of accounts receivable as an asset, and failed to list real property that he owned. *Id.* He did not have a complete set of financial records for his medical practice inasmuch as he discarded records after only 3 months. *Id.* at 448. He claimed to have only learned of the additional accounts receivable post-petition, however he did not amend his schedules to that effect. *Id.* In considering all of the evidence before it, the Court concluded that the debtor had failed to accurately complete his schedules in order to avoid paying certain of his creditors. *Id.* at 450. The Court refused to allow the protections of the Bankruptcy

Code to be used as a sword by the debtor to avoid paying his creditors. *Id.*

 The Plaintiffs further allege that the Debtor filed false tax returns for 1994. However, without investigating whether or not the Debtor filed such returns, this Court is of the opinion that § 727(a)(4) refers only to oaths taken in regard to the bankruptcy proceeding. A false oath consists of an omission or false statement by the Debtor in his schedules or at an examination held during the course of the bankruptcy. *In re Sapru,* 127 B.R. at 314. Therefore, filing false tax returns are not a reason to deny a Debtor's discharge under § 727(a)(4)(A).

 Plaintiffs also allege that the Debtor lied under oath as to his alleged status as a 100% shareholder of the medical practice, as opposed to only a 50% shareholder. In *Corning Vitro Corp. v. Shah (In re Shah),* 169 B.R. 17 (Bankr. E.D.N.Y.1994), the debtor was denied a discharge where he clearly attempted to mislead the Court. There the debtor failed to list in his bankruptcy schedules checking accounts and a mortgage he had an interest in. *Id.* at 20. At the time he filed and swore to the schedules, he clearly knew of the existence of those assets, but did not feel inclined to disclose them. *Id.* That scenario differs from the instant case where Dr. Beeber did list the medical practice as an asset but inserted a question mark for its value in his schedules of assets. This is understandable as litigation was pending to resolve the status of the medical practice and it was not clear to Dr. Beeber what its value was at that time. (Tr. April 8, 1998 at 28, 62.) But he did disclose its existence to the Court so that the Court as well as his creditors knew of its existence as a possible asset enough to investigate its status. As the court in *Shah* pointed out, it was the Debtor's duty to "answer truthfully." *Id.* at 21. The Court finds that Dr. Beeber did not misstate his shareholder status sufficient to deny his discharge under § 727(a)(4)(A).

██ Lastly, the Plaintiffs' claim that the Debtor allegedly exaggerated the monthly expenses in his petition by including his wife. However, a budget required of a Debtor when filing a petition for relief under Chapter 7, as was done in this case, allows for the debtor to include expenses for a spouse where they are in the same household, a fact existing here.

In spite of the numerous allegations presented, this Court finds that the Plaintiffs' failed to meet their burden of demonstrating that Dr. Beeber made any false statement regarding a material matter in this case. Therefore, Dr. Beeber's discharge will not be denied pursuant to § 727(a)(4)(A).

*§ 727(a)(6) Claim*

Bankruptcy Code § 727(a)(6)(A) states:

(a) The Court shall grant the debtor a discharge, unless—...

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

11 U.S.C. § 727(a)(6)(A). The Plaintiffs allege that the Debtor refused to obey orders of this Court by not expending the requisite effort to collect the accounts receivable of RBPC and failing to supply sufficient information to Dr. Rothman to collect the receivables. In that regard, this Court issued an order dated August 8, 1995, which stated in pertinent part:

2. All checks and other payments received by the Debtor for professional services performed for patients by RBPC prior to February 1995 shall be turned over to the Trustee;

3. The Debtor shall cooperate in effecting the collection of the accounts receivable of RBPC;

4. The Debtor and the Trustee shall maintain complete and accurate records (including copies of checks) of all payments received for services provided to

patients of RBPC prior to February 1995. (Pls.' Ex. 40.) A second order of this Court was issued on August 27, 1996 which stated, in pertinent part:

4. The debtor shall turn over and otherwise make available to Dr. Rothman and his agents all books and records and computer printouts relating to the accounts receivable of RBPC, to the extent the accounts receivable relate to medical services provided by the debtor prior to February 3, 1995, the filing date of the debtor's chapter 7 petition in this Court and as reflected in the document annexed as Exhibit I to Dr. Rothman's application;

5. The reasonable expenses of photocopying the foregoing books and records and/or accessing data from the computer records maintained by the debtor shall be borne by Dr. Rothman;

(Pls.' Ex. 41.)

As Federal Rule of Bankruptcy Procedure 4005 places the burden on the objecting creditor, it is up to the Plaintiffs to show that there has been a violation of the aforementioned orders. *See Collier* ¶ 727.09[1]. "The burden of going forward then shifts to the debtor to prove that he or she has not committed the objectionable act." *Id. (citing Connelly v. Michael,* 424 F.2d 387 (5th Cir.1970)).

The Plaintiffs allege that Dr. Beeber failed to account for $81,622 in income in February 1995. They base this assertion on the fact that $81,622 is listed on a chart entitled "Jerry Beeber, M.D., Yearly Summary Report" for 1995, but Dr. Beeber did not disclose this amount on his personal tax returns for that year. (Pls.' Ex. 66.) At trial, Dr. Beeber could not recall whether or not he declared that amount as part of his personal income. (Tr. April 20, 1999 at 70.) Plaintiffs' allegation is essentially that this $81,622 must have been an asset of RBPC if it was not a part of Dr. Beeber's personal income, and therefore should have been turned over to the trustee pursuant to the court order. However, Plaintiffs fail to prove that these monies were in fact accounts receivable of RBPC.

The Plaintiffs also allege that the Debtor deposited checks into his personal account that were for accounts receivable of RBPC. The Plaintiffs submitted, as proof of this allegation, a copy of a cancelled check made out to Rothman Beeber, P.C. with an endorsement showing that it was deposited to Dr. Beeber's account. (Pls.' Ex. 61.) However, Plaintiffs failed to demonstrate affirmatively that this was actually for payment of an accounts receivable for services provided pre-petition. As Dr. Beeber testified, this may have just been a clerical error because not all companies were aware that the practice name was changed. This check may well have been payment for medical services performed post-petition and therefore is not itself sufficient proof that Dr. Beeber failed to cooperate as the court order required.

After hearing testimony on 14 different days, and examining an inordinate amount of exhibits, this Court can not find evidence sufficient to prove that Dr. Beeber failed to cooperate in the collection of the accounts receivable of RBPC as ordered by this Court. The Plaintiffs' alleges that Dr. Beeber refused to collect these accounts receivable. However, Geraldine Harrington, (hereinafter "Ms. Harrington"), who was originally employed by RBPC and later by Jerry Beeber, M.D., P.C., whose job responsibility it was to make phone calls and submit bills, testified that Dr. Beeber was very conscientious about accounting for any money that was received that was to be applied to RBPC. (Tr. July 15, 1998 at 115–17, 122.) Dr. Beeber testified that he never told his employees not to collect the accounts receivable. (Tr. April 8, 1998 at 52, 82.) Lastly, although Donna Talcove (hereinafter "Ms. Talcove"), another employee who was originally employed by RBPC and later by Jerry Beeber, M.D., P.C., stated in her pre-trial deposition that Dr. Beeber

had told her to stop making phone calls. As a matter of fact, when Dr. Beeber changed addresses, Ms. Talcove's job description changed and was told to no longer make any collection calls as it would be Ms. Hochberg's responsibility. (Tr. June 24, 1998 at 109–10, 116–18.) During her trial testimony, Ms. Talcove corrected what she had stated at her deposition and stated that Dr. Beeber never instructed her specifically not to collect the aged accounts receivable. (Tr. June 24, 1998 at 120, July 15, 1998 at 35–36, 52–55, 64–66.) In addition, while only a small amount of accounts receivable were recovered, the order of this court merely stated that Dr. Beeber was to "cooperate" in effecting the collection of the accounts receivable. (Pls.' Ex. 40.) The trustee never testified that Dr. Beeber in any way refused to cooperate.

■ Although § 727(a)(6) provides that a bankruptcy court shall deny a discharge for failure to obey a lawful court order, case law has demonstrated that the denial is subject to the discretion of the court. *In re Kokoszka,* 479 F.2d 990, 997 (2nd Cir.1973), *cert. granted sub nom., Kokoszka v. Belford,* 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), *aff'd,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *and reh. denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974); *Silverman v. Katz (In re Katz),* 146 B.R. 617, 621–22 (Bankr. E.D.N.Y.1992). Based upon the above findings of this Court, the Plaintiffs' § 727(a)(6) claim for denial of the Debtor's discharge is denied.

## DISCHARGEABILITY OF DEBTS

### § 523(a)(4) Claim

In the sixth count of their complaint, the Plaintiffs allege that the Debtor violated his fiduciary duty by failing to pay Dr. Rothman 50% of the accounts receivable of RBPC at the time he left the practice. This violation of fiduciary duty, by virtue of § 523(a)(4), would require this Court to hold the debt owed to Dr. Rothman to be nondischargeable. However, in light of the arbitration that occurred subsequent to the filing of the complaint, the Plaintiffs post-trial brief alleges that the amount adjudicated by the arbitration panel to be due Dr. Rothman, that is $275,000, should be deemed nondischargeable under § 523(a)(4) instead of the 50% of the accounts receivable. In addition, the Plaintiffs' post-trial brief states that the amount calculated by the Plaintiffs' expert to be officer loans, $102,880, should also be deemed nondischargeable.

Section 523(a)(4) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). The statute restricts an allegation of fraud or defalcation to a situation where there is a fiduciary relationship. There is no such restriction for allegations of embezzlement or larceny. In the instant case, Plaintiffs do not make any accusations of embezzlement or larceny. Plaintiffs' argue that Dr. Beeber had a fiduciary duty as an officer of RBPC and he violated that duty by using money belonging to RBPC for his personal expenses.

■ As this Court has stated previously on this issue:

There is a two step process in determining whether a debt falls within the § 523(a)(4) exception to discharge where fraud or defalcation are alleged. *In re Chavez,* 140 B.R. 413, 422 (Bankr. W.D.Tex.1992). The first step is to determine whether a fiduciary relationship existed prior to the transaction which produced the debt. *Id.; See Gore v. Kressner (In re Kressner),* 155 B.R. 68, 73 (Bankr.S.D.N.Y.1993) ("it must be initially established that the debtor acted in a fiduciary capacity"); *Farina v. Balzano (In re Balzano),* 127 B.R. 524,

532 (Bankr.E.D.N.Y.1991) (determining if fiduciary relationship existed is a threshold question). If no fiduciary relationship existed, then analysis ends there with the conclusion that the debt does not fall within the § 523(a)(4) exception. If a fiduciary relationship did exist, the second step is to examine if fraud or defalcation occurred during that relationship. *In re Chavez,* 140 B.R. at 422.

*Rosen v. Rosen (In re Rosen),* 232 B.R. 284, 295–96 (Bankr.E.D.N.Y.1999).

■ The law is clear that a corporate officer and director has a fiduciary duty to the corporation itself as well as the stockholders in general. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *See Moreno v. Ashworth (In re Moreno),* 892 F.2d 417, 421 (5th Cir.1990) ("[The debtor] does not dispute that he owed a fiduciary duty to [the corporation] because he was an officer. This duty encompassed, at least, a responsibility not to lend [the corporation's] money to himself or corporations controlled by him on less than an arms-length basis."); *See Also In re Phillips,* 185 B.R. at 129 ("the Parties were the sole and equal owners of [the corporation], each with a fiduciary responsibility to the business and to each other."); *First Nat'l Bank of Boston v. Overmyer (In re Overmyer),* 52 B.R. 111, 118 (Bankr.S.D.N.Y. 1985) ("The liability of corporate officers and directors to the corporation is not dischargeable when bottomed on fiduciary fraud.").

■ In the present case, Dr. Beeber was elected secretary of RBPC, and Dr. Rothman and Dr. Beeber were the sole members of the board of directors, effective as of July 1, 1978. (Pls.' Ex. 1, Admitted Material Facts 17 & 18.) Neither party claims that any further action constituting a change in corporate officers or the board of directors has since occurred. Therefore, Dr. Beeber was both a director and officer of RBPC prior to his bankruptcy filing.

The Debtor relies upon *In re Frain* for the proposition that a person in the position of a shareholder and director of a close corporation does not have a fiduciary duty to the other shareholders and directors of the corporation. *In re Frain (O'Shea v. Frain),* 222 B.R. 835, 837 (Bankr.N.D.Ill.1998). However, that case is inapposite because that court found no express trust was created under Illinois state law, therefore, there was no fiduciary duty. *Id.* As was already discussed, cases following New York law have in fact found a fiduciary relationship sufficient to meet the threshold question of § 523(a)(4). *See In re Phillips,* 185 B.R. at 129–30; *In re Overmyer,* 52 B.R. at 118.

The next step that the Court must address is whether Dr. Beeber violated his fiduciary duty to RBPC. This is a question of fact. An examination of the testimony given as well as the material facts that were not disputed by the Debtor is necessary.

■ The Plaintiffs' allege that the Debtor violated his fiduciary duty to the corporation by using funds of the corporation solely for his own benefit. Plaintiffs' Exhibit 1, titled Response to Statement of Material Facts, contains the following admitted facts regarding the Debtor's use of funds of the corporation for his personal expenses:

32. Commencing as of the end of October 1993, the Debtor assumed control of all financial aspects of RBPC.

62. The Debtor never told Dr. Rothman that he was going to receive compensation of $243,837 from RBPC in 1994.

78. During the period November 1993 through January 1995, the Debtor used RBPC funds to pay for gasoline credit card charges for Exxon, Sunoco, Mobil, Texaco and Amoco, which are reflected in Exhibit 24 annexed to the Motion.

79. During the period December 1993 though January 1995, the Debtor used RBPC funds to pay for his home tele-

phone bill, charged to number (718) 448-5431 which are reflected in Exhibit 24 annexed to the Motion.

80. During the period November 1993 through October 1994, the Debtor used RBPC funds to pay for auto insurance of his car, his daughter's Saab and his wife's Volvo, which are reflected in Exhibit 24 annexed to the Motion.

81. During the period November 1993 through December 1994, the Debtor used RBPC funds to pay for repairs and maintenance on his car, his daughter's Saab and his wife's Volvo, which are reflected in Exhibit 24 annexed to the Motion.

82. During the period November 1993 through January 1994, the Debtor used RBPC funds to pay for dental bills, including Dr. Tager, which are reflected in Exhibit 24 annexed to the Motion.

83. During the period February 1994 through January 1995, the Debtor used RBPC funds to pay for personal life insurance and disability insurance, which are reflected in Exhibit 24 annexed to the Motion.

84. During the period November 1993 through January 1995, the Debtor used RBPC funds to pay for registration of the Debtor's car and his daughter's Saab, which are reflected in Exhibit 24 annexed to the Motion.

(Pls' Ex. 1.) In addition, Dr. Beeber also testified that he took advances and bonuses from RBPC after Dr. Rothman had left the practice. (Tr. April 20, 1998 at 100-03.) However, it was not disputed by Dr. Rothman that taking some bonuses, as well as paying personal expenses, had been a somewhat routine practice for both Dr. Beeber and Dr. Rothman while Dr. Rothman was an active member of the practice. (Tr. April 20, 1998 at 101-03.) Therefore, Dr. Beeber's use of corporate funds for certain personal expenses was not a violation of his fiduciary duty to the corporation.

The Plaintiffs' also allege that the Debtor essentially converted the practice from RBPC to his own private practice without Dr. Rothman's consent. The following facts, admitted to by the Debtor, are relative to Dr. Beeber's changes to the medical practice:

53. The Debtor executed a certificate of amendment of RBPC's certificate of incorporation in March 1994 changing the name of RBPC to "Jerry Beeber, M.D.P.C."

119. The Debtor did not inform Dr. Rothman of his plan to relocate to 3371 Richmond Avenue in Staten Island.

121. Subsequent to January 1, 1995, the Debtor removed, or caused the removal from 1800 Clove Road of, all active RBPC patients medical records and complete personal histories on at least 766 patients stored on RBPC's computer disks.

122. Dr. Rothman did not authorize the Debtor to remove the foregoing records and information from the Premises.

124. Prior to February 6, 1995, the Debtor sent a written announcement to patients of RBPC informing them that he was relocating his office to 3371 Richmond Avenue, Staten Island, N.Y. as of February 6, 1995, as reflected in Exhibit 33 annexed to the Motion.

125. Subsequent to the Filing Date, and for a period of at least 60 days thereafter, anyone calling RBPC's old telephone number ((718) 273-1822) was instructed to contact the Debtor at his new office phone number ((718) 227-1018), all pursuant to the Debtor's direction.

126. From and after the Filing Date, all of RBPC's medical assistants and office personnel, namely, Donna Talcove, Gerry Harrington, and Marge Paccione, became employed at the Debtor's "solo practice" at 3371 Richmond Avenue.

127. Patients of RBPC who, prior to February 6, 1995, made appointments for office visits or other medical treatment scheduled subsequent to February 6, 1995 were told to come to the Debt-

or's "solo practice" at 3371 Richmond Avenue, Staten Island, NY.

(Pls.' Ex. 1.) In addition, Dr. Beeber testified that he never received anything from Dr. Rothman that would lead him to believe that Dr. Rothman was no longer a director or president of RBPC. (Tr. April 8, 1998 at 31–33.) The Debtor also testified that he ceased the RBPC medical practice in January 1995 and started his solo practice in February 1995, but he does not explain how this was legally done. (Tr. April 20, 1999 at 23.)

It would appear from the foregoing that Dr. Beeber, while an officer of RBPC, ceased the operations of the medical practice, moved, then continued a medical practice, albeit under a different name, without the proper corporate procedures required. Section 803 of the New York Business Corporation Law requires an amendment to the certificate of incorporation, which Dr. Beeber filed in order to change the name of the practice from RBPC to Jerry Beeber, M.D., P.C., to "be authorized by vote of the board, followed by vote of a majority of all outstanding shares entitled to vote thereon at a meeting of shareholders." N.Y. BUS. CORP. § 803(a) (McKinney 1998). There was no vote as required by this section when Dr. Beeber unilaterally decided to change the name of the corporation. This "conversion" of RBPC to a supposedly solo practice was a violation by Dr. Beeber of his fiduciary duty to the corporation, which in turn caused damage to both RBPC and Dr. Rothman as the shareholder that would have to be "bought out" for Dr. Beeber to change RBPC into a solo practice.

Debts owed to another shareholder, officer or director of a corporation, arising out of the corporate relationship between the parties, have been held to be nondischargeable by at least one court in the Eastern District of New York where there has been a breach of a fiduciary duty to the corporation. See In re Phillips, 185 B.R. at 130. As was discussed earlier in this opinion, Judge Eisenberg's reasoning in Phillips, that an injury to a closely held corporation by a fifty percent owner clearly causes a direct injury to the other fifty percent owner, is accepted as accurate by this Court. Id. at 129. Therefore, this Court may find that if Dr. Beeber violated his fiduciary duty to RBPC, the debt owed to Dr. Rothman arising from that violation may be deemed nondischargeable.

The creditor seeking to have its debt deemed nondischargeable under § 523 of the Code has the burden of establishing its case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). By reason of all of the foregoing and an examination of the record taken during the course of the trial, there was a preponderance of the evidence sufficient to justify that Dr. Beeber violated his fiduciary duty to Dr. Rothman. In determining the amount of the nondischargeable debt due Dr. Rothman from Dr. Beeber, this Court looks to the arbitration panel which made two awards, namely $130,000 to Dr. Rothman due solely from Dr. Beeber, and $145,000 due Dr. Rothman jointly and severally from Dr. Beeber and RBPC. This Court will treat the combined award of $275,000 as nondischargeable and as due and owing from Dr. Beeber to Dr. Rothman since it was he who essentially took over RBPC and changed the corporate name to Jerry Beeber, M.D., P.C. Inasmuch as the Trustee disbursed $12,444.56 to Dr. Rothman in partial satisfaction of the arbitration award, the amount of debt deemed nondischargeable is the balance of $262,555.44 still remaining. (Pls.' Ex. 39.)

As for the $102,880 in alleged officer loans as deduced by Richard Friedman, the expert witness who testified for the Plaintiffs, this Court is not satisfied with the accuracy of the number. Furthermore, this Court believes that the arbitration award sufficiently compensates Dr. Rothman for his damages suffered as a result of Dr. Beeber's actions. Therefore the $102,880 is not separately deemed nondischargeable.

*§ 523(a)(6) Claim*

Section 523(a)(6) requires a finding of nondischargeability of any debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court addressed the scope of § 523(a)(6) in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Court explained "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability take a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 118 S.Ct. at 977. In that case, the Supreme Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 978.

In a recent decision by Hon. Laura Taylor Swain, a bankruptcy judge in this district, she explored the Supreme Court's decision in *Geiger* and found that a requirement of intent on the part of the debtor must be established. *Desert Palace, Inc. v. Baumblit (In re Baumblit)*, 229 B.R. 50, 64 (Bankr.E.D.N.Y.1999), *appeal docketed*, No. 99–CV–1829 (E.D.N.Y. Mar. 31, 1999). The creditor must demonstrate that the debtor intended the actual consequence of harm to the creditor and not just the act itself. *Id.* In that case, Judge Swain found a debt owed by the debtor to a gambling casino was dischargeable because the casino failed to establish any intent of the debtor to cause harm to the casino, since it was conceded that the debtor had believed he would repay the debt at the time credit was extended to him. *Id.*

The Plaintiffs' allege that the Debtor willfully and maliciously destroyed the accounts receivable of RBPC. As for that allegation, this Court has already stated previously in this opinion that the Debtor did not fail to obey this Court's order regarding the accounts receivable, therefore it is also found that the Debtor's conduct regarding the accounts receivable was not willful and malicious.

The Plaintiffs also allege that Dr. Beeber destroyed Dr. Rothman's beneficial interest in RBPC. Although this Court has found that Dr. Beeber did violate his fiduciary duty in regard to the medical practice, the evidence and testimony submitted to this Court does not rise to the level of willful and malicious. While Dr. Beeber did take actions such as changing the corporate name without following the proper corporate procedures, his actions do not appear to this Court to be have been done intentionally to harm Dr. Rothman. Instead, this Court believes that Dr. Beeber acted under incorrect, innocent assumptions on how to start his own solo practice.

## THE FINDINGS OF FACT

The foregoing opinion constitutes this Court's findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

For the reasons stated above, I conclude as follows: (1) That portion of Plaintiffs' complaint seeking the denial of discharge under §§ 727(a)(2)(A), (a)(2)(B), (a)(4)(A) and (a)(6) is denied; (2) That portion of Plaintiffs' complaint seeking a finding of nondischargeability of a debt under § 523(a)(6) is denied; (3) That portion of Plaintiffs' complaint seeking a finding of nondischargeability of a debt owed to Dr. Rothman by Dr. Beeber is granted to the extent that $262,555.44 is deemed nondischargeable pursuant to § 523(a)(4) and judgment against the Debtor in favor of Dr. Rothman in that amount will be entered by a separate order of this Court; and (4) in all other respects, the Debtor is granted a discharge of his debts.

The attorneys for Plaintiffs are directed to settle an order in conformity with this opinion.