In re Anibal CASADO, M.D., Debtor.

Herman CASTILLO and Janet Castillo, Plaintiffs,

v.

Anibal CASADO, M.D., Defendant.

Bankruptcy No. 893–83940–478.
Adv. No. 893–8495–478.

United States Bankruptcy Court,
E.D. New York.

Oct. 3, 1995.

Smith Mazure Director Wilkins Young Yagerman & Tarallo, P.C. by Harvey B. Ginsberg, New York City, for Plaintiffs.

Rosenberg Rosenberg & Weiner by Kenneth Walsh, Brooklyn, New York, for Debtor.

### DECISION BARRING DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

DOROTHY EISENBERG, Bankruptcy Judge.

This is an adversary proceeding in which the plaintiffs, Herman Castillo and Janet Castillo (the "Plaintiffs" or the "Castillos") seek to bar the discharge of the Debtor, Anibal Casado, M.D. (the "Debtor") pursuant to 11 U.S.C. Section[1] 727(a)(4)(A).[2] The Plaintiffs claim that the Debtor made false

---

**1.** Unless otherwise indicated, all Section and Rule references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rule 1001 *et seq.*

**2.** Section 727(a)(4)(A) provides in pertinent part as follows:

statements in his schedules by (i) falsely listing accounts receivable due to him at the time of filing in the amount of $2,000.00, when the receivables were many times that amount; (ii) failing to list household goods and furnishings of value, and (iii) failing to list several lawsuits pending against him. Based upon all the pleadings and the record made at trial, this Court finds that the Plaintiffs have sustained their burden and the Debtor's discharge will accordingly be barred.

### FINDINGS OF FACT

The Debtor has practiced as a surgeon in the United States for at least twenty years, and has an office in Rego Park, New York. On or about July 31, 1985, while performing a surgical procedure on Janet Castillo, the Debtor seriously injured her.

On or about December 5, 1985, the Castillos commenced an action against the Debtor for medical malpractice. At that time, the Debtor did not have malpractice insurance. On January 7, 1993, after a bench trial, the Debtor was found liable in the state court and a judgment was entered in favor of the Castillos in a sum in excess of $678,000.00. To date, no part of the judgment has been satisfied and the Plaintiffs are creditors of this Debtor's estate.

On July 9, 1993, (the "Petition Date") the Debtor filed a petition for relief under Chapter 7. A review of the Debtor's petition reveals that the only debts listed are a debt to Citibank in the amount of $8,000.00 and debts to the Plaintiffs in the aggregate amount of $687,793.00. The schedules do not include any reference to pending lawsuits against the Debtor. With respect to assets, the schedules reveal $2,000.00 in accounts receivable. No household goods or furnishings are listed. The Debtor's Rego Park office is not listed as real property owned by the Debtor.

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account

On November 1, 1993, the Plaintiffs commenced the instant adversary proceeding against the Debtor, seeking to bar the Debtor's discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code.

During the course of this adversary proceeding the Plaintiffs had made several discovery demands upon the Defendant with which he did not comply. After several opportunities to cure, this Court entered an Order on October 12, 1994 barring the Defendant from offering any evidence at the trial regarding any documents which had not been completely provided to counsel for the Plaintiffs. At trial, the Debtor provided testimony regarding certain statements contained in the petition. According to the Debtor, the premises where the office is located is owned by the Debtor's wife. There is no lease for the office space and no writing in regard to the Debtor's obligations thereon. The Debtor pays an amount which equals the mortgage and interest payments and pays for all maintenance and related expenses. The Debtor presented no evidence of any checks or payments to his wife. The Debtor testified that his gross annual income for the last three years was approximately $180,-000.00 to $220,000.00. The Debtor and his secretary kept the books and records. All his employees are part-time workers or independent contractors and the Debtor makes no deductions from their wages, and makes no payments to any taxing authority for these employees. The Debtor claims to have three part-time employees who make and receive office calls, take patients into the appropriate examining rooms and do the paperwork and recordkeeping. The Debtor claims to have no background in accounting or bookkeeping, but claims that he does maintain accounts receivable and expense records. His accounts receivables are purportedly recorded on the patient's individual chart. However, he produced no evidence of any schedules or records which would reflect all of his income, his expenses, or an up-to-date list of accounts receivable due to him at the time of filing the petition. He does not have a book of expenses, only worksheets. He keeps these worksheets for three months and then discards them. The Debtor relies on checks as receipts for expenses paid, yet he presented none to the Plaintiffs during discovery or at trial.

In the Debtor's petition, he listed accounts receivable in the sum of $2,000.00. He claims that at the time he filed the petition he asked his secretary to provide him with this information and she gave him all pending patient bills outstanding which approximated $2,000.00. The Debtor learned of additional accounts receivable that were due to him post-petition, but did not amend his schedules. In fact, the existence of the additional accounts receivable was extracted from his accountant after discovery requests made by the Plaintiffs.

The schedules further reveal that the Debtor failed to list any pending lawsuits at the time he filed the petition. At trial, the Debtor admitted that he was involved in at least two lawsuits at the time the petition was filed. On December 2, 1991, Louis Aponte ("Aponte") commenced a suit against the Debtor in connection with injuries sustained in an automobile accident. As of the Petition Date the Aponte case was still pending and active in the New York Supreme Court. Subsequent to the filing of the petition on or about January 31, 1994, the Debtor settled the Aponte case for $30,000.00. The Debtor had minimal auto insurance and the insurance company paid $10,000.00 to Aponte. The Debtor agreed to pay the balance by paying $5,000.00 every six months after settlement. The Debtor did pay $5,000.00 on that judgment in February, 1994. The evidence is uncontradicted that the Debtor failed to list this creditor which had a pre-petition claim and in fact actually paid that creditor post-petition.

In addition, the case of *Alberta Ridgeway* had been pending for three years prior to September 30, 1994 when a Note of Issue in that case was filed. The malpractice case of *Ortiz v. Anibal Casado, M.D.* was also pending in New York State Court. A Note of Issue was entered on April 3, 1993, three months prior to the petition. (Plaintiff's Exhibit "7"). None of the pending litigation was mentioned in the statement of financial affairs signed by the Debtor.

With respect to the Debtor's two listed creditors, the Debtor revealed at trial that the debt to Citibank was based on a continuing revolving credit line. According to the petition, the amount due as of the Petition Date was listed at $8,000.00. In fact, the debt to Citibank was actually paid subsequently thereto in continuance of the line of credit agreement and was in essence not an overdue debt. Citibank's claim was not a debt that had been in default pre-petition. The only listed creditors whom the Debtor has failed to pay are the Plaintiffs herein.

█ The Plaintiffs presented evidence indicating that the Debtor's statement regarding the accounts receivable as of the Petition Date was inaccurate. In addition to cash received by the Debtor from patients, the bulk of the Debtor's paid accounts receivable were received from insurance companies that provided insurance on the health claims of his patients. A review of the relevant exhibits in evidence indicates that there was substantially more due to the Debtor in accounts receivable than the Debtor had scheduled. Although the Debtor claims that he knew very little about his accounts receivable since his part-time bookkeeper took care of these matters and he was not involved in the billing practices, during the course of this case, he failed to produce any documentation or evidence to support his statement that there was only $2,000.00 in accounts receivable, or to contradict the contrary evidence produced by Plaintiffs.

In sum, it is clear from the testimony and the facts and circumstances of this case that the Debtor's main purpose in filing the petition was to avoid paying the Plaintiffs' judgment. The only legitimate creditors of the Debtor are the Plaintiffs, despite the statements contained in the petition to the contrary. The Plaintiffs presented considerable evidence to support the allegation that the Debtor grossly understated the accounts receivable that were assets of this Debtor's estate. The Debtor merely claims that he

may have had inaccurate records. This, however, does not excuse the Debtor. The Debtor has introduced no records from which any proper accounting of the outstanding accounts receivable could have been discerned. In fact, had the Plaintiffs' complaint included a request to bar the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3),[3] there is sufficient evidence to have enabled this Court to grant this request as well.

█ With respect to the failure to list lawsuits, the Debtor claims that his English is poor and that he did not understand that lawsuits which he was in the process of settling were to be listed. However, the Debtor has been in the United States since 1960 and is a practicing medical surgeon. He reads medical records and prescribes medicines. He consults with other doctors in regard to health issues and the condition of his patients. The Debtor appears to thus know and understand English quite well and knew or should have known that the answers that he provided to some of the questions in the schedules and statement of affairs were false.

█ Once the Plaintiff presented a *prima facie* case of material misstatements, the burden shifts to the Debtor to explain these inaccuracies. The Debtor has failed to do so.

### DISCUSSION

█ The debtor who files a petition with the Bankruptcy Court is required to file a variety of other papers, including a list of creditors and, unless the Court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the Debtor's financial affairs. 11 U.S.C. § 521(1). The schedules and statements must be filed with the petition, or, if the petition is accompanied by a list of all the creditors and their addresses, within fifteen days thereafter. Fed. R.Bankr.P. 1007(c). The statement of financial affairs requires the Debtor to list *all*

---

**3.** Section 727(a)(3) provides in pertinent part as follows:
(a) The court shall grant the debtor a discharge, unless—
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any

recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

lawsuits and administrative proceedings to which the Debtor was or is a party within one year immediately preceding the filing of the petition. See Official Form 7, item 4. If the lawsuit is against the Debtor, it should also be listed as an unliquidated, contingent liability on the Debtor's schedules. Thus, the Debtor is required to notify creditors through the schedules and statement of financial affairs of any litigation in which he is involved. To prevail under Section 727(a)(4)(A) of the Code, the objecting creditor must show that a false statement was made regarding a material matter relating to the Debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property. *In re Sawyer,* 130 B.R. 384 (Bankr.E.D.N.Y.1991); *In re Montgomery,* 86 B.R. 948, 956 (Bankr.N.D.Ind.1988); *In re Sapru,* 123 B.R. 948, 957 (Bankr. E.D.N.Y.1990). The standard of proof in a discharge action is the preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules:

> Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt.... Statements called for in the Schedules ... must be regarded as serious business; reckless indifference to the truth ... is the equivalent of fraud.

*In re Diorio,* 407 F.2d 1330, 1331 (2d Cir. 1969). *See In re Kaiser,* 722 F.2d 1574, 1583, n. 4 (2d Cir.1983) (attempts to justify false statements in the debtor's schedules based on the actions of third parties and debtor's own inadvertence were unavailing); *In re Diodati,* 9 B.R. 804, 808 (Bankr.D.Mass.1981) ("the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A).").

■ The Defendant's good faith belief in the lawfulness of his or her conduct in not revealing the pending lawsuits is not a defense to a bankruptcy fraud charge. The statutory requirement of "knowingly" mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law. The defendant's reckless indifference to the truth is sufficient to sustain a cause of action under Section 727(a)(4)(A). *See In re Diorio,* 407 F.2d at 1331.

In addition, throughout this case the Debtor failed to produce necessary documentation which had been subpoenaed. The failure to produce documents which had been subpoenaed, and which would have clearly set forth all of his assets and liabilities at the time of filing suggests to the court an adverse inference as to the oral statements made by the Debtor in his defense. Based on the Debtor's testimony at trial, it is probable that had he produced all of his account receivable records they likely would have revealed that he was entitled to and probably has collected post-petition substantially more than the amount in accounts receivable alleged by the Plaintiffs.

Not only did the Debtor fail to reveal all of his assets and all of his creditors, but it is clear from the petition and schedules that were filed that he made material false statements in order to avoid payment to the Plaintiffs, while working out settlement arrangements with other pre-petition creditors. The Debtor's course of conduct demonstrates an obvious pattern of deceit which flies in the face of the true purpose of the Bankruptcy Code; to provide the honest debtor with a fresh start. The protections granted to a Debtor pursuant to the Bankruptcy Code are to be used as a shield to protect the honest but unfortunate Debtor, not as a sword against judgment creditors whom the Debtor chooses not to pay.

The evidence overwhelmingly established that at a minimum, the Debtor violated Section 727(a)(4)(A) of the Code in his failure to list all accounts receivable and all pending lawsuits.

## CONCLUSION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This adversary proceed-

ing is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

The Debtor made material false statements in his petition and statement of affairs. Pursuant to Section 727(a)(4)(A), the Debtor, having knowingly made false oaths in connection with his case, will be denied his discharge.

Settle an Order in accordance with this decision.