**In re Thomas MURRAY, Debtor.**

**Carlucci & Legum, LLP, Plaintiff,**

**v.**

**Thomas Murray, Defendant.**

**Bankruptcy No. 897–88036–288.**
**Adversary No. 898–8056–288.**

United States Bankruptcy Court,
E.D. New York.

Aug. 13, 1999.

As amended Sept. 10, 1999.

---

Steven G. Legum, Carlucci & Legum, LLP, Mineola, NY, for Plaintiff.

Howard J. Wunderlich, Special Litigation Counsel, East Islip, NY, for Defendant.

**MEMORANDUM AND ORDER DENYING CREDITOR'S OBJECTION TO DISCHARGE UNDER SECTION 727(A)(4)**

STAN BERNSTEIN, Bankruptcy Judge.

**I. Issue:**

Is the combination of the debtor's intentional non-disclosure of, or "reckless indifference" in completing accurate schedules of assets and liabilities and loan transactions within one year of the petition date, of (i) $3,500 in insider loans, (ii) an $8,000 loan from the debtor's 401(k) plan on the eve of bankruptcy, and (iii) misleading description of the state of title to real property, sufficiently material to deny the debtor his discharge under 11 U.S.C. section 727(a)(4)?

**II   Background:**

**A.   The Debtor**

Based upon the information contained in his schedules, the debtor, Thomas Murray, works as a machine-operator in Newsday's printing plant. His monthly income is $4,000 less his payroll deductions of $1,600. His monthly expenses of $2,435 slightly exceeds his take home pay of $2,400. As a divorced father of two young children, the debtor remains liable for their support.

The debtor listed twenty unsecured creditors who are owed in the aggregate $83,000. Within that $83,000 total is the liquidated and unsecured $5,800 claim of his former counsel, the plaintiff in this adversary proceeding. The majority of the other creditors are the issuers of credit cards. No creditor filed a complaint for a determination of nondischargeability of its claim under section 523(a) of the Bankruptcy Code. But for the filing of this adversary proceeding, Mr. Murray would have discharged $83,000 in prepetition unsecured debt, and could then devote his after-tax income to paying his support obligation and to spending a fairly modest amount on his own personal expenses.

As to his assets, the debtor's Schedule A shows that he holds title to his home under

a tenancy by the entirety (sic)[1], with a fair market value of $175,00 and a mortgage balance of $87,000. His Schedule B also shows a 401(k) plan with a value of zero which he sought to explain with an annotation that he "cannot access" the funds (sic)[2]. As of the petition date, he has cash of $100 and owns a 1995 Ford Explorer, with a fair market value of $29,000, against which he owes $30,000 to his secured creditor. He also owns a 1985 Buick Regal worth $750. He scheduled his clothing at $2,500 and his furniture at $2,500. Under his Schedule C, he exempted all of the cash, the clothing, the furnishings, and $10,000 in the residence as homestead exemption. The Schedule C is silent with respect to any claim of exemption in his 401(k) plan.

### B. The complaint filed against the debtor.

The law firm of Carlucci & Legum (plaintiff) filed its complaint against the debtor, a former client whom it represented in a state court matrimonial action. The plaintiff objected to the debtor's discharge under section 727(a)(4)(A) and other sub-sections of the Bankruptcy Code. The plaintiff's claim of $5,800 is based upon its unpaid legal fees in the prepetition matrimonial action. Following argument on the defendant's motion in limine, the Court dismissed all allegations based upon the provisions of section 727 other than those under subsection (a)(4)(A)— that the debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account," to wit, filing false schedules of assets and liabilities and the statement of affairs.

At trial, the plaintiff sought to prove the filing of a fraudulent statement of assets and liabilities. The entries alleged to be knowingly false were the following:

1. Assets:

   a. An interest in the former marital residence as held by tenancy by the entireties when it should have been listed as held by tenants in common;

   b. A 401(k) plan described as having zero value when the debtor's vested interest was approximately $99,000; and

   c. Failure to disclose $8,000 in cash or in a check representing the proceeds of a loan against the 401(k).

2. Liabilities:

   a. Undisclosed insider claims held by the debtor's brother for $1,000, and the debtor's mother for $2,500;

   b. An undisclosed $8,000 in liability owing to the plan administrator; and

   c. An undisclosed contingent liability to the debtor's former spouse as co-obligor on a mortgage loan.

The general defense to the complaint was to deny any fraudulent intention by the debtor with respect to each of these entries. At worst, according to the debtor, each of these false entries was due to either negligence or inadvertence upon the part of the debtor, or to reasonable reliance upon the advice of the debtor's counsel in preparing these entries on the schedules.

At the trial, the plaintiff called the debtor and the debtor's mother as adverse witnesses; the debtor's special counsel produced the debtor's consumer bankruptcy counsel, Alan Weinreb, Esq. (debtor's counsel), who represented the debtor in filing the petition and preparing the debtor's schedules and statement of affairs. Mr. Wunderlich undertook to represent the debtor as special trial counsel (debtor's

---

1. See section III(D)(1) infra. Title to the property is held by tenants in common by virtue of the debtor's divorce decree; the other tenant is his former wife.

2. See section III(D)(2) infra.

special counsel) after the plaintiff filed this adversary proceeding.

At the conclusion of the trial, the Court found as a fact that the debtor's testimony was severely lacking in credibility. This Court finds that the debtor filed his schedules and statement of affairs with reckless indifference whether the information was true or false. Nevertheless, the gravamen of a complaint under section 727(a)(4)(A) is that intentionally false schedules must be *materially* false.

The debtor's special counsel has argued in this case that the Court should find these false entries to be immaterial: (i) the false entries of assets were ones, which if properly disclosed, would have been exempt from liquidation by the trustee; (ii) as to the omitted liabilities, no creditors, scheduled or omitted, will receive any distribution from the liquidation of non-exempt assets of this estate. In these respects, therefore, the debtor's special counsel argues, the creditors have not been prejudiced by any intentional or reckless misstatement of value or omission of assets, nor, since there are no non-exempt assets to distribute, have the creditors been prejudiced by the omission of the claims of insiders.

This proceeding was tried to conclusion in a single afternoon on Friday, December 11, 1998.[3] The plaintiff and defendant each filed post-trial memoranda. In a follow-up letter from the Court in February, the debtor's special counsel was also directed to submit an affidavit from the debtor's pension plan administrator describing the transaction history of a loan made on the eve or after the filing of the debtor's petition and to brief the issue whether the legal status of a qualified pension account as exempt from execution under applicable New York State law extends to the proceeds of a loan from that account. The debtor's special counsel submitted the affidavit and much later a further memorandum.[4]

### III. Discussion:

#### A. What is the Meaning of Materially False in the Case Law?

##### 1. Is there a Kantian Imperative in Section 727(a)(4)?

There is a strong suggestion in some of the reported opinions that section 727(a)(4) embodies an unbending Kantian categorical imperative to tell the complete truth in order for debtors to obtain a discharge. Starting from this moral premise, the definition of materiality is grounded in "ensuring that dependable information is available to those interested in the administration of the bankruptcy estate." *In re Sapru*, 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991)(citing cases). As the Sapru Court further pointed out, " 'In order to obtain a discharge, a debtor must reveal and not conceal his or her financial condition because *complete disclosure* is the touchstone in a bankruptcy case.' " *In re Sapru*, 127 B.R. at 306 (citing *In re*

---

**3.** During the trial, the debtor's counsel, Alan Weinreb, Esq., testified concerning several statements he claimed to have made to the chapter 7 trustee at the statutory meeting of creditors. Following the trial, the debtor's counsel sent a letter to the Court, with a copy to the plaintiff, in which he acknowledged that his recollection at trial had been faulty— he, in fact, had not appeared at the meeting of creditors. The plaintiff then sent a reply to Mr. Weinreb's letter, demanding that his testimony be stricken or that Mr. Weinreb be subject to further cross-examination. The plaintiff was advised that as a condition to reopening the proofs, it would be required to submit transcripts of the meeting of creditors and of the testimony of Mr. Weinreb. Plaintiff then advised the Court that it would not proceed further on this limited issue. The only inference which may be drawn is that the plaintiff has now waived its request for recross examination of Mr. Weinreb.

**4.** The plaintiff has repeatedly complained that the submissions of the debtor's special counsel have been late, but this Court has determined to overrule that objection because of the imbalance of resources between the parties and because the plaintiff has not been materially prejudiced by the delay.

**528**

*Bernard,* 99 B.R. 563, 570 (Bankr.S.D.N.Y.1989))(Emphasis added).

■ This Court respectfully disagrees that section 727(a)(4) embodies the Kantian imperative at least with respect to debtors who are not sophisticated in business affairs. A thorough search of all of the reported decisions under section 727(a)(4) over the past ten years in this district failed to find a single case in which a judgment denying a debtor a discharge was entered against a debtor who was not engaged in a commercial or professional enterprise. A practical sense of justice mandates that in determining the dispositive issue in a section 727(a)(4) complaint, the court balance the debtor's intentional or reckless errors or omissions in his schedules against the actual harm to the estate.

This practical sense of justice is captured in *In re Sawyer,* 130 B.R. 384, 394 (Bankr.E.D.N.Y.1991):

> To prevail under Section 727(a)(4)(A) the objecting creditor must show that the false statement was made with respect to a material matter, that is, one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets or existence or disposition of property (Citations omitted).

2. What Does "Materially False" Mean?

■ If the concept of materiality is to serve any discriminating purpose in construing section 727(a), there must be, to satisfy the 'principle of falsification,' some statements that are found not to be material. That requires the exercise of judgment based upon the facts and circumstances of each case, and not a legal presumption. This also means that each alleged intentionally or recklessly false statement must be examined asset-by-asset, liability-by-liability, rather than imposing a 'gestalt' of falsehood on a series of mis-statements.

■ Part of the implicit semantic confusion in this subject area arises from either conflating several strands of meaning of the adverb 'materially.' According to the most authoritative dictionaries, 'materially' can mean: (i) of significance, importance or weightiness; (ii) of relevancy; or (iii) in philosophical parlance, pertaining to 'matter' as opposed to 'form.' This Court's apprehension is that 'materially' can be conflated with the far more open-ended or unbounded sense of 'relevancy.' This invariably leads, not to a well-grounded finding of fact, but to a conclusion of law that any non-disclosure, by definition, 'materially' affects the ability of the trustee to administer the estate. The half-suppressed premise is that if full disclosure had been properly made, then the trustee could have recovered assets for distribution to the estate. As a matter of fact, that may or may not be true. At a minimum, a court should not assume the fact of a potential and substantial recovery to buttress that conclusion. In this Court's judgment, 'materially' is not properly about relevancy at all; it is only about demonstrable matters of importance as a direct function of what a trustee could actually distribute to creditors, if full and accurate disclosure of assets and liabilities had been timely made by the debtor.

■ One of the understandable frustrations in applying the law to the facts in this case is that the debtor did not testify truthfully and straight-forwardedly at trial. There is a natural tendency to read back this lack of respect for the truth and the forum to the recent prepetition past when the debtor filled out his schedules. Indeed, the plaintiff harps upon the debtor's evasive and precious testimony during the trial as proof of the debtor's prepetition misconduct. Nevertheless, section 727(a)(4)(A) does not turn on a debtor's deliberately evasive testimony at trial, however irritating or improper; that section only asks the question whether at the time the schedules were filed, did the debtor intentionally or recklessly file materially

false schedules, and not whether the debtor later testifies evasively. Any bankruptcy judge soon becomes accustomed to a tragic sense of life—there are no completely honest but unfortunate debtors in any strict or absolute sense. This is not to deny that the great majority of debtors make a bona fide effort to make reasonably full disclosure, but holding a working-class debtor who earns less than $50,000 a year to a standard of disclosure that only the most conscientious accountant could satisfy is a counsel of perfection, and cannot sensibly be the operative meaning of section 727(a)(4). Mr. Murray may well be a debtor who elicits the least amount of sympathy from the Court because of his untruthful and evasive testimony, but the denial of a discharge is a very severe sanction and should be imposed only when the debtor's 'false oath' causes a material loss to the estate.

## B. The False Statements in these Schedules.

### 1. Former marital residence.

█ The debtor listed his interest in the former marital residence as "tenancy by the entireties," when it should have been listed as an interest as a tenant in common with the debtor's former spouse. This presumably was an intentional miscue to the trustee. The debtor's counsel, testified that the debtor properly described his interest in the property as "one half, with the other one-half held by my former spouse" in his initial prepetition meetings. Counsel failed to override by correcting in hand-writing or typing the printing of a "default" entry in his computer which enters such interests as "tenancy by the entireties." Moreover, the debtor's counsel testified that the trustee, Andrew M. Thaler, Esq., soon realized, following the debtor's examination at the meeting of creditors, that this entry was inconsistent with the divorced status of the debtor, which was timely disclosed. Thus, the trustee was not misled, and he continues to try to market the estate's interest in the

property. In this instance, the debtor has a bona fide basis for claiming inadvertent and nonmaterial error, mixed with reliance upon his counsel who should have been more attentive to the misleading "default" entries in his computer software.

### 2. 401(k) plans; $8,000 loan.

█ With respect to the 401(k) plan, the schedules show a value of "zero." Again, the debtor's counsel testified that the computer software program he then used did not permit text to be typed into the column listing numerical values, although counsel admitted that he could and should have made such an entry in the other adjacent column describing the asset. The entry would have been "unknown amount," counsel averred. Counsel should have instead insisted that the debtor produce the latest annual statement from the plan administrator or trustee summarizing the amount of the debtor's vested interest. The listing of "unknown amount" does not satisfy the disclosure requirements of the Bankruptcy Code. Perhaps "unknown amount" may have served as a temporary entry if the petition were filed in a rush, but the debtor and his counsel had more than sufficient time to quantify the value of that asset by the meeting of creditors and to have filed amended schedules.

In this case, the debtor testified that as of the 24th of October of 1995 when he signed his schedules, he did not know the balance in his 401(k) plans, nor did he know whether he could borrow against the funds. (Indeed, he told his counsel that he could not "access his fund," and from his testimony at trial, it would appear to this Court that counsel did not know enough basic ERISA law to ask the proper follow-up questions.) Yet the debtor further testified that between the 27th, the Monday on which he filed, and the 30th, he learned that he could "access his account," that he made an application for a loan, and that the loan closed immediately. For on October 30, 1995, the debtor deposited the loan

proceeds of $8,000 into his mother's checking account.

The affidavit of the pension plan administrator shows that the debtor lied under oath during the trial. For what, in fact, occurred was that the debtor (i) applied for the advance against his 401(k) plan on or before October 21, 1995, *six days* before the petition date, and (ii) the loan in the form of a check was issued on October 21, 1995 by the plan administrator. This Court is also prepared to find that since the check was probably mailed on that same day, the debtor probably received it before the 27th. In any event, the loan transaction should have been fully and accurately disclosed on the schedules and on the statement of financial affairs. For if the check had been in the possession of the debtor before the petition date, then that instrument should have been listed as a negotiable instrument, with a claim that the loan proceeds retained exempt status. Moreover, the schedules should have been properly and timely amended to reflect the extent of the exempt value in the 401(k), rather than to continue showing it as zero.

In this instance, the plaintiff made a prima facie showing that the pension account and the loan transaction were not properly disclosed on the schedules and statement of affairs. Once that showing had been made, the burden shifted to the debtor to prove that the omission of this asset and transaction was not material to the trustee's administration of this estate. The debtor's response is largely a point of law. Under the applicable state law, the pension plan is exempt from execution by creditors, and any check representing the proceeds of a plan distribution retains its exempt status. Thus, by operation of law, the property of the bankruptcy estate would exclude these proceeds as exempt, and the non-disclosure would not adversely affect the trustee's administration or liquidation of property of the estate. For this Court, that is a dispositive consideration, although it would have been far more preferable as a matter of good practice and for ease of administration for that transaction to have been fully described in the schedules and statement of affairs.

### 3. Omitted creditors.

In passing, the debtor's special litigation counsel makes the point that under the case law in this Circuit, a loan from the debtor's pension plan is not a "debt," and, therefore, does not have to be scheduled. As such, even an intentional omission of a pension loan cannot be the basis for an objection to a discharge. Counsel relies upon *In re Villarie*, 648 F.2d 810 (2d Cir. 1981). In the context of a chapter 13 case, this Court wrote an extensive opinion on whether *Villarie* has been superseded by more recent decisions by the United States Supreme Court. See *In re Buchferer*, 216 B.R. 332 (Bankr.E.D.N.Y.1997). Under *Buchferer*, this Court held that the pension loan administrator is a creditor holding a nonrecourse loan—the administrator's remedy is to enforce its secured interest in the debtor's account by way of setoff. Nothing that the debtor's special counsel has argued causes this Court to reconsider its earlier analysis. It should, however, be noted that the decision in this case does not turn on whether the pension loan administrator should have been listed as a nonrecourse secured creditor, so in this respect the *Buchferer* line of analysis is not directly relevant to this disposition of this case.

The debtor also failed to schedule loans allegedly owing to his mother ($2,500) and brother ($1,000). He testified that these really were not loans—there were no instruments, no charge or accrual for interest, no repayment schedule, etc. He would not say these advances were gifts either, but he repeatedly stated that they were not obligations that he would be seeking to discharge and that members of his family did not expect repayment. He did, however, testify that he repaid his mother the $2,500 loan from the $8,000 in proceeds from his 401(k) loan. This was directly contradicted by his mother's testi-

mony—she did hope to be repaid, and, in fact, she has not been repaid. She testified without any "affect" whatsoever, and this Court finds her testimony credible, although quite sad.

The debtor also admitted that his brother advanced $1,000 to him during the prepetition period, but that loan remains unpaid. In the scheme of things, this Court could perhaps find that at best these loans were "soft loans," and far more likely to be gratuitous transfers that need not be protected or treated with the same dignity in the law as the bona fide claims of noninsider creditors. Moreover, in a no-asset case, these omitted insider creditors will receive neither better nor worse treatment in the empty hands of the trustee. In this respect, then, this is not a material omission of liabilities from the debtor's schedules. That the debtor would lie about modest transactions with his mother and brother under oath during trial, with his mother in the courthouse (but sequestered at the time of her son's testimony) is further evidence that his character for telling the truth is debased, but once again proof of this character trait is not proof of intentionally filing material false schedules and a statement of affairs.

The plaintiff also criticized the debtor for not listing his former spouse as a co-obligor on the mortgage. This seems to be a complete red herring; each was jointly and severally liable, so the debtor would have to, and did list, the full obligation. In a formal sense, it is true that the debtor's former spouse would have rights to contribution or subrogation to the extent she paid any of these mortgage amounts, and in that sense, she would be a contingent creditor. Her "third-party rights" to indemnification, contribution, reimbursement, or subrogation may also be directly affected by the terms of the divorce judgment, which was not introduced into evidence. Narrowly viewed, this omission of this contingent liability of the debtor to his former spouse has no affect on the rights or powers of the trustee as representative of the creditors holding allowable claims.

IV  Conclusion.

In a chapter 7 case, the trustee is charged with the duty of investigating and objecting to any improper claims of exemption. In this case, the debtor was recklessly indifferent to the truth when he signed the schedules that contained false or misleading entries relating to the status and amount of his vested interest in a pension plan and his last-minute $8,000 loan transaction. These false entries were, however, not material, assuming that means that in a direct sense that they did not and could not impair the trustee's administration of this case. That makes those entries, by definition, insufficiently material to deny the debtor his discharge of prepetition claims under section 724(a)(4)(A). The other false entries discussed in this opinion are not aggregative to add dispositive weight to the validity of the plaintiff's objection to the debtor's discharge.

The Court has entered a separate judgment dismissing the plaintiff's complaint with prejudice consistent with this opinion.