In re Thomas MURRAY, Debtor.

Carlucci & Legum, Plaintiff/Appellant,

v.

Thomas Murray, Defendant/Appellee.

No. 99–CV–5245 CBA.
Bankruptcy No. 897–88036–288.
Adversary No. 898–8056–288.

United States District Court,
E.D. New York.

June 12, 2000.

Howard J. Wunderlich, Lake Grove, NY, for debtor.

Steven Legum, Mineola, NY, for appellant.

Andrew M. Thaler, Thaler & Gertler, Westbury, NY, for trustee.

### MEMORANDUM & ORDER

AMON, District Judge.

### Introduction

This bankruptcy appeal arises out of an adversary proceeding instituted against

the debtor Thomas Murray by one of his creditors, Carlucci & Legum ("C & L"), the law firm that represented Murray in his divorce proceedings. C & L sought to prevent Murray's discharge under several subsections of 11 U.S.C. § 727. After a trial, the bankruptcy court found for the debtor, and C & L appealed to this Court. For the reasons discussed below, the decision of the bankruptcy court is reversed.

## Background

### A. Factual Background

The debtor, Thomas Murray, filed a voluntary Chapter 7 bankruptcy petition on October 27, 1997. Murray listed two secured creditors and fourteen unsecured creditors who are owed approximately $83,000, including over $5,800 to his former counsel, the plaintiff in this adversary proceeding. "As to his assets, the debtor's Schedule A shows that he holds title to his home under a tenancy by the entirety (sic), with a fair market value of $175,00 and a mortgage balance of $87,000. His Schedule B also shows a 401(k) plan with a value of zero which he sought to explain with an annotation that he 'cannot access' the funds (sic). As of the petition date, he has cash of $100 and owns a 1995 Ford Explorer, with a fair market value of $29,000, against which he owes $30,000 to his secured creditor. He also owns a 1985 Buick Regal worth $750. He scheduled his clothing at $2,500 and his furniture at $2,500. Under his Schedule C, he exempted all of the cash, the clothing, the furnishings, and $10,000 in the residence as homestead exemption. The Schedule C is silent with respect to any claim of exemption in his 401(k) plan." *In re Murray*, 238 B.R. 523, 525–26 (Bankr.E.D.N.Y.1999).

Plaintiff filed a complaint objecting to the debtor's discharge under various subsections of Title 11, section 727(a). Prior to trial the bankruptcy court dismissed all allegations except those arising under subsection (a)(4)(A)—that the debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account"—by filing false schedules of assets

and liabilities and the statement of affairs. Plaintiff alleged the following entries or omissions on the schedules were knowingly false and fraudulent:

1. Assets:

a. An interest in the former marital residence as held by tenancy by the entireties when it should have been listed as held by tenants in common;

b. A 401(k) plan described as having zero value when the debtor's vested interest was approximately $99,000; and

c. Failure to disclose $8,000 in cash or in a check representing the proceeds of a loan against the 401(k).

2. Liabilities:

a. Undisclosed insider claims held by the debtor's brother for $1,000, and the debtor's mother for $2,500;

b. An undisclosed $8,000 in liability owing to the plan administrator; and

c. An undisclosed contingent liability to the debtor's former spouse as co-obligor on a mortgage loan.

*Id.*

It should be noted that another misrepresentation alleged by appellant was that debtor's schedule said debtor " 'cannot access' " his 401(k) plan, even though plaintiff allegedly could and actually had recently taken out the $8,000 loan against the plan.

### B. The Decision Below

Regarding the inaccurate listing of the legal status of the martial residence, the bankruptcy court found this inadvertent and nonmaterial. *See Murray*, 238 B.R. at 529. The court further found that C & L had made a prima facie case pursuant to § 727(a)(4)(A) that the 401(k) account and the $8,000 loan were not adequately disclosed. *See id.* at 530. Debtor's schedule listed the amount in his 401(k) as "0" and said that debtor "cannot access" the plan. The bankruptcy court found that this was not true: the 401(k) actually contained approximately $99,000, and before signing his

petition debtor had applied for an $8,000 loan from the 401(k), undermining any claim that he could not access that money. *See id.* In addition, the loan check was issued, and most likely received by debtor, before his petition was filed. *See id.* This transaction should also have been accurately disclosed, but was not. *See id.* Although the court found that C & L had made a prima facie case that the 401(k) plan and the $8,000 loan were insufficiently disclosed on the schedules, *see id.;* nevertheless, the bankruptcy court held that the non-disclosures were immaterial and as a result would not prevent discharge. *See id.*

Turning from the schedules to debtor's testimony at trial, the bankruptcy court also found that Murray lied under oath at trial regarding the loan from the 401(k) plan, *see id.,* and regarding whether he repaid a $2,500 loan from his mother. *See id.* at 530–31; *see also id.* at 528 ("[T]he debtor did not testify truthfully and straightforwardly at trial."). However, the court held that these intentional falsehoods during trial testimony were not relevant under § 727(a)(4)(A), which only concerns false statements in the schedules. *See id.* at 528–29.

Appellant C & L argues that the bankruptcy court erred in several respects. (1) The bankruptcy court applied an incorrect test for the "materiality" of the false statements. According to C & L, no prejudice need be shown to creditors for a false oath to be material; however, the bankruptcy court based its finding of immateriality on the lack of prejudice to the trustee and creditors. (2) The bankruptcy court should have denied discharge once it found that debtor testified falsely at the trial. Instead the court held that the only relevant false statements are those found in the schedules to the petition. (3) The misrepresentations in the schedules and at the 341 meeting were sufficient to deny discharge. (4) The bankruptcy court improperly suggested that the test for discharge under § 727(a)(4)(A) is more le-

nient for unsophisticated debtors. (5) The bankruptcy judge displayed bias against C & L.

*Discussion*

### A. Jurisdiction and Standard of Review

The Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158(a). *See In re First Jersey Securities, Inc.,* 180 F.3d 504, 508 (3d Cir.1999); *In re Orange Boat Sales,* 239 B.R. 471, 473 (S.D.N.Y.1999). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. In reviewing the decisions of the bankruptcy court, this Court is bound to accept its factual findings unless clearly erroneous, but will review its conclusions of law de novo. *See In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999) (citations omitted); *In re Bennett Funding Group, Inc.,* 146 F.3d 136, 138 (2d Cir.1998) (citations omitted). Decisions committed to the discretion of the lower court are reviewed under an abuse of discretion standard. *See, e.g., Orange Boat Sales,* 239 B.R. at 474.

### B. Denying Discharge under Section 727(a)(4)(A)

Title 11, section 727 of the Bankruptcy Code denies discharge to the debtor if he commits any number of acts, such as making fraudulent transfers to defeat creditors, failing to keep or destroying books and records, and making false statements. Section 727(a)(4)(A), the only subsection at issue herein, provides: "The court shall grant the debtor a discharge, unless—the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account." Denial of discharge is a severe sanction and as a result § 727 must be construed strictly in favor of the debtor. *See In re Chalasani,* 92 F.3d 1300, 1310 (2d Cir.1996) (citation omitted).

■ It is well-established that to prove an objection to discharge under § 727(a)(4)(A), the creditor must prove the following by a preponderance of the evidence:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the debtor knew the statement was false;

(4) the debtor made the statement with fraudulent intent; and

(5) the statement related materially to the bankruptcy case.

*In re Dubrowsky,* 244 B.R. 560, 572 (E.D.N.Y.2000) (citations omitted).

■ "Fraudulent intent must be shown by actual, not constructive fraud. The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. . . . [I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." *Id.* at 571–72 (citations omitted); *see also In re Diorio,* 407 F.2d 1330, 1331 (2d Cir.1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt. . . . [R]eckless indifference to the truth . . . is the equivalent of fraud.") (citation omitted). "Because a debtor is unlikely to admit to having made a deliberate misstatement, an objector may prove knowledge of falsity for purposes of Code § 727(a)(4)(A) by proving that the debtor acted with at least a reckless disregard for the truth." *In re Scott,* 233 B.R. 32, 44 (Bankr.N.D.N.Y.1998) (citing *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998)). "Where it reasonably appears that the oath is false, the burden falls upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent." *In re Gollomp,* 198 B.R. 433, 437 (S.D.N.Y.1996) (quoting *In re Arcuri,* 116 B.R. 873, 884 (Bankr. S.D.N.Y.1990)) (internal quotation marks omitted).

Taking the bankruptcy court's decision as a whole, it is clear the judge found that debtor made false statements with the requisite fraudulent intent. The Court specifically found that C & L had made a "prima facie showing" regarding the 401(k) and the $8,000 loan sufficient to shift the burden to Murray to explain the misrepresentations. *See Murray,* 238 B.R. at 530. Nothing in the record suggests that debtor came forward with any credible evidence or explanation for these misrepresentations; in fact, as discussed above, the bankruptcy court found that debtor's testimony at trial regarding these issues was untruthful. Nevertheless, the bankruptcy court found for Murray, and the gravamen of the court's decision is that the falsehoods in the schedules were not material or were otherwise irrelevant to the issue of discharge under § 727(a)(4)(A).

■ C & L's primary complaint about the bankruptcy court's decision is that the court applied an erroneous test for materiality. The statute itself does not contain an explicit materiality requirement. Rather, the requirement was created by courts to ensure that debtors are not denied discharge for inconsequential or technical omissions. *See In re Bailey,* 147 B.R. 157, 164 (Bankr.N.D.Ill.1992) (quoting *In re Dunbar,* 99 B.R. 320, 323 (Bankr.M.D.La. 1989)). District courts and bankruptcy courts in the Second Circuit agree that materiality is defined as follows:

To prevail under Section 727(a)(4)(A) the objecting creditor must show that the false statement was made with respect to a material matter, that is one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property.

*In re Sawyer,* 130 B.R. 384, 394 (Bankr. E.D.N.Y.1991) (citations omitted); *accord In re Beeber,* 239 B.R. 13, 27 (Bankr. E.D.N.Y.1999) (citations omitted); *In re Casado,* 187 B.R. 446, 450 (Bankr.E.D.N.Y. 1995). This test has been adopted by a leading treatise, *see* 6 *Collier on Bankruptcy* § 727.049[1][b], at 727–40, as well as almost every court of appeals. *See In re Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992); *Mertz v. Rott,* 955 F.2d 596, 598 (8th Cir.1992); *In re Burgess,* 955 F.2d 134, 137 n. 4 (1st Cir.1992), *abrogated on other grounds by, Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990); *United States v. Key,* 859 F.2d 1257, 1261 (7th Cir.1988); *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir.1987); *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984); *In re Steiker,* 380 F.2d 765, 768 (3d Cir.1967).

Although the Second Circuit has apparently not adopted a standard of materiality under § 727(a)(4)(A), it has addressed the issue of prejudice. In cases predating the current Bankruptcy Code, but which have been repeatedly relied upon subsequently,[1] the Second Circuit has "consistently held . . . that materiality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir.1974) (citing *Morris Plan Industrial Bank v. Finn,* 149 F.2d 591, 592 (2d Cir.1945); *In re Slocum,* 22 F.2d 282, 285 (2d Cir.1927)).

C & L argues that the bankruptcy court in this case erred by holding that lack of prejudice to creditors made several of the false statements immaterial. Although debtor maintains that the misrepresentations were not material, his counsel conceded at oral argument that the bankruptcy court applied the wrong legal standard by requiring a showing of prejudice. The bankruptcy court made the following general observations on the issue of materiality:

> In this Court's judgment, 'materially' is not properly about relevancy at all; it is only about demonstrable matters of importance as a direct function of what a trustee could actually distribute to creditors, if full and accurate disclosure of assets and liabilities had been timely made by the debtor.

*Murray,* 238 B.R. at 528.

> A practical sense of justice mandates that in determining the dispositive issue in a section 727(a)(4) complaint, the court balance the debtor's intentional or reckless errors or omissions in his schedules against the actual harm to the estate.

*Id.*

> [T]he denial of a discharge is a very severe sanction and should be imposed only when the debtors "false oath" causes a material loss to the estate.

*Id.* at 529.

> These false entries were, however, not material, assuming that means that in a direct sense that they did not and could not impair the trustee's administration of this case. That makes those entries, by definition, insufficiently material to deny the debtor his discharge of prepetition claims under section 724(a)(4)(A).

*Id.* at 531.

Regarding the intentional non-disclosure of the amount of money in the 401(k) and the $8,000 loan from the 401(k), the bankruptcy court found that the falsehoods were non-material for the following reason:

> Under the applicable state law, the pension plan is exempt from execution by creditors, and any check representing the proceeds of a plan distribution retains its exempt status. Thus, by operation of law, the property of the bankruptcy estate would exclude these proceeds as exempt, and the non-disclo-

---

1. *See, e.g., United States v. Gellene,* 182 F.3d 578, 588 n. 15 (7th Cir.1999) (citing *Robinson* ); *In re Shah,* 169 B.R. 17, 21 (Bankr. E.D.N.Y.1994) (citing *Morris Plan* ); *In re Sapru,* 127 B.R. 306, 315 (Bankr.E.D.N.Y.1991) (citing *Slocum* ).

**230**

sure would not adversely affect the trustee's administration or liquidation of property of the estate. For this Court, that is a dispositive consideration. . . . *Id.* at 530.

It is also worth noting that in his oral ruling at trial, the bankruptcy judge indicated that his decision on the non-disclosure of the $8,000 loan turned on whether there was "prejudice" to the administration of the bankruptcy estate. *See* Tr. 170.

Regarding the non-disclosure of the loans from debtor's mother and brother, the Court found these were not material misrepresentations for the following reason:

> [I]n a no-asset case, these omitted insider creditors will receive neither better nor worse treatment in the empty hands of the trustee. In this respect, then, this is not a material omission of liabilities from the debtor's schedules.

*Murray,* 238 B.R. at 531.

■ These excerpts from the bankruptcy court's decision reveal that the court held, in contradiction to controlling Second Circuit authority, that harm to creditors—or as the bankruptcy court sometimes phrased it, harm to the estate or harm to the trustee's administration of the estate—is the test for the materiality of a false oath. Debtor does not dispute that the bankruptcy court applied an incorrect standard for materiality. This error requires reversal.

■ Under the appropriate test, at least two misrepresentations in the instant case—the ones regarding the 401(k) plan and the $8,000—were clearly material. As discussed above, a "material matter" is "one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property." *Sawyer,* 130 B.R. at 394. Virtually every imaginable asset becomes property of the estate upon the filing of a bankruptcy petition. *See In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993) ("every

conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541"). Lying about assets that are part of the estate—even if possibly exempt— certainly bears a relationship to the estate. Indeed, the lies were about estate property. *See Mertz v. Rott,* 955 F.2d 596, 598 (8th Cir.1992) (non-disclosure of exempt tax refund was material because it was an "asset" of the estate are therefore bore a "relationship" to the estate); *In re Sapru,* 127 B.R. 306, 316 (Bankr.E.D.N.Y.1991) (non-disclosure of exempt or worthless assets was material because the falsehoods "relate to the Debtor's assets and business dealings, and taken as a whole are misleading to both the court and the creditors as to the nature and extent of the Debtor's business transactions and estate."). The $99,000 in the 401(k) plan and the $8,000 loan were property of the estate, and nondisclosure of them is accordingly material under the applicable test.

■ The fact that the assets were arguably exempt does not change this analysis. The Supreme Court has apparently not addressed the question whether nondisclosure of allegedly exempt assets is material under § 727(a)(4)(A). The Second Circuit did address the issue in *Morris Plan Industrial Bank v. Finn,* 149 F.2d 591, 592 (2d Cir.1945) (per curiam), stating that intentional non-disclosure of exempt property is sufficient to deny discharge because creditors "are entitled to judge for themselves from a true account of the facts, what will benefit, and what will prejudice, them." *Id.* at 592. Although this statement is dicta, it is clearly a correct statement of the law for a number of reasons.

■ First, as already discussed, non-disclosure of exempt property fits squarely within the definition of material discussed above. Moreover, claiming an asset need not be disclosed because it is exempt puts the cart before the horse. "Before an exemption can be claimed, it

must be estate property." *Yonikus*, 996 F.2d at 869. "Section 522(1) of the Bankruptcy Code specifically directs a debtor to file a list of property that the debtor claims as exempt." *Sapru*, 127 B.R. at 314. Property is not exempt by fiat of the debtor, but only through a process of compliance with the statutory disclosures and then by order of the bankruptcy court:

> "Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate." This is because "[t]he bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." Section 522(1) of the Bankruptcy Code and Fed. R.Bankr.P. 4003 require debtors claiming exemptions to list the allegedly exempt property in their schedule of assets. The claims of exemptions are then open to scrutiny by the trustee and the court. The bankruptcy process provides that the debtor must first list such property and claim such exemptions. Next, the trustee has an opportunity to review the claim for exemptions. Then, upon the trustee's objections, the bankruptcy court determines the legitimacy of the claim or, if the trustee has no objections, the exemption is then granted.

*In re Bailey*, 147 B.R. 157, 163 (Bankr. N.D.Ill.1992) (quoting *In re Yonikus*, 974 F.2d 901, 904 (7th Cir.1992)); *see also Mertz*, 955 F.2d at 598 (denying discharge for non-disclosure of allegedly exempt property) (citations omitted); *In re Downey*, 242 B.R. 5, 17 (Bankr.D.Idaho 1999); *Sapru*, 127 B.R. at 314–15.

It is therefore meaningless to say that disclosure is not required because property is exempt. Property can only become exempt through a legal process that includes disclosure. To repeat the central point, "[t]he bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." *Yonikus*, 974 F.2d at 905.

Second, the policies underlying the Bankruptcy Code are undermined if debtors can receive a discharge even though they conceal allegedly exempt property:

> The purpose behind 11 U.S.C. § 727(a)(4) is to enforce debtors' duty of disclosure and to ensure that the debtor provides reliable information to those who have interest in the administration of the estate. "Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors." Since § 727(a)(4) relates to the discovery of assets and enforces debtors' duty of disclosure, an omission can be material, even if the creditors were not prejudiced by the false statement.

*Bailey*, 147 B.R. at 163; *see also In re Coombs*, 193 B.R. 557, 565–66 (Bankr. S.D.Cal.1996) (same); *Sapru*, 127 B.R. at 315 ("Allowing such a practice would place an onerous burden on the bankruptcy trustee and creditors to investigate into every asset of a debtor to determine if it qualifies as exempt property, a task which is the debtor's responsibility."). Furthermore, the substantial benefit of discharge of one's debts is a privilege only accorded to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).[2]

Finally, debtors must disclose their allegedly exempt assets because "trustees and creditors are entitled to know what these assets are, if for no other reason than to be able to test the assertion that they are properly held and qualified [in the case of retirement plans], and indeed fall

---

2. It is noteworthy that Judge Bernstein apparently disagrees with the Supreme Court on this point: "Any bankruptcy judge soon becomes accustomed to a tragic sense of life—

there are no completely honest but unfortunate debtors in any strict or absolute sense." *Murray*, 238 B.R. at 529.

within [federal and state exemptions]." *Downey,* 242 B.R. at 17; *see also Morris Plan Industrial Bank v. Finn,* 149 F.2d 591, 592 (2d Cir.1945) (creditors "are entitled to judge for themselves from a true account of the facts, what will benefit, and what will prejudice, them"); *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984) (same) (citing *Morris Plan* ); *Bailey,* 147 B.R. at 163 ("Allowing debtors the discretion to not report exempt or worthless property usurps the role of the trustee, creditors, and the court by denying them the opportunity to review the factual and legal basis of debtors' claims. It also permits dishonest debtors to shield questionable claims concerning an asset's value and status as an exemption from scrutiny."); *Coombs,* 193 B.R. at 566 (same).

There is some contrary authority. *See, e.g., In re Natale,* 136 B.R. 344, 350 (Bankr.E.D.N.Y.1992); *In re Woerner,* 66 B.R. 964, 974 (Bankr.E.D.Pa.1986). However, in both *Natale* and *Woerner* the debtor was found to be an honest person who made inadvertent mistakes. *See Natale,* 136 B.R. at 350; *Woerner,* 66 B.R. at 970 & 973. As the *Bailey* court argued in distinguishing these cases, "[n]o cases have been found in which a debtor was found to have knowingly and fraudulently omitted an asset from his schedules, but was then granted a discharge because the asset was worthless or exempt." *Bailey,* 147 B.R. at 164. Like the *Bailey* court, this Court is aware of no precedents that grant discharge in circumstances like those in the instant case.

For the foregoing reasons, the Court finds that the bankruptcy court erred by holding that non-disclosure of the allegedly exempt 401(k) plan and $8,000 check cannot be material under § 727(a)(4)(A). Since the court below indicated that all of the other requirements of § 727(a)(4)(A) had been met with regard to these false oaths, *see Murray,* 238 B.R. at 530, there is no need to remand this case to the bankruptcy court for the application of the correct legal standard. Once the proper test for

materiality is employed, there is no question that debtor should be denied discharge.

*C. Other Alleged Errors in the Bankruptcy Court's Decision*

Appellant also complains of other errors by the bankruptcy court. First, appellant reads the decision below to suggest that debtors who are not professionals or business owners are held to a more lenient standard of truthfulness and accuracy under § 727(a)(4)(A). For instance, the bankruptcy court stated:

> There is a strong presumption in some of the reported opinions that section 727(a)(4) embodies an unbending Kantian categorical imperative to tell the complete truth in order for debtors to obtain a discharge.... This Court respectfully disagrees that section 727(a)(4) embodies the Kantian imperative at least with respect to debtors who are not sophisticated in business affairs. A thorough search of all of the reported decisions under section 727(a)(4) over the past ten years in this district failed to find a single case in which a judgment denying a debtor a discharge was entered against a debtor who was not engaged in a commercial or professional enterprise.

*Murray,* 238 B.R. at 527–28; *see also id.* at 529 ("[H]olding a working-class debtor who earns less than $50,000 a year to a standard of disclosure that only the most conscientious accountant could satisfy is a counsel of perfection, and cannot sensibly be the operative meaning of section 727(a)(4).").

▬ Neither the bankruptcy court nor appellee cited any authority to support this proposition, and this Court's own research has not uncovered any legal basis to make this distinction between sophisticated and unsophisticated debtors. Murray was found to have intentionally lied, both in his schedules and at the trial in the adversary proceeding. This conduct cannot be excused, no matter whether debtor was a

business-owning or professionally-employed perjurer or simply a working class perjurer.

Another issue raised by appellants is the bankruptcy court's holding that falsehoods at trial do not come within the purview of § 727(a)(4)(A). *See Murray*, 238 B.R. at 528–29 (finding that debtor lied under oath at trial but holding that only misrepresentations in the schedules and not those at trial are not cognizable under section 727(a)(4)(A)). Appellant takes issue with this, arguing that the intentionally fraudulent lies at trial should be sufficient to deny Murray discharge.

█ Debtor had been served with a complaint alleging that, inter alia, his schedules were untruthful. A trial was held regarding the misstatements alleged in the complaint. Debtor was not, and could not have been, on trial for false statements he made during that trial. Nevertheless, the bankruptcy judge's finding that debtor repeatedly, intentionally lied at trial is relevant to the issues tried because, as discussed above, it was highly probative of debtor's fraudulent intent in filing false schedules.

Appellant also argues that the bankruptcy court displayed bias against appellant and in favor of debtor. The Court need not address this question because of its resolution of the § 727 issues.

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is reversed. Debtor's numerous false oaths necessitate a denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A). This case is remanded to the bankruptcy court solely for the entry of judgment in favor of appellant.

SO ORDERED.